# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF NORTH CAROLINA

## DURHAM DIVISION

| | |
|---|---|
| DANIELLE SEAMAN, individually and on behalf of all others similarly situated, | Case No. 1:15-cv-00462 |
| Plaintiff | |
| v. | **BRIEF IN SUPPORT OF MOTION FOR: (1) CERTIFICATION OF SETTLEMENT CLASS; (2) PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; (3) LEAVE TO AMEND; AND (4) SETTING OF SCHEDULE FOR FINAL APPROVAL** |
| DUKE UNIVERSITY, DUKE UNIVERSITY HEALTH SYSTEM; AND WILLIAM L. ROPER, | |
| Defendants. | Fed. R. Civ. P. 15, 23 |

# TABLE OF CONTENTS

**Page**

I.   THE NATURE OF THE MATTER BEFORE THE COURT ................................. 1

II.  STATEMENT OF FACTS ...................................................................... 3

    A.   Procedural History and Background ............................................ 3

    B.   Terms of the Settlement ................................................................ 5

        1.   Classwide Injunctive Relief .................................................. 5

        2.   Discovery Cooperation ........................................................ 7

        3.   The Proposed Settlement Class............................................ 7

        4.   Release of Claims Against the UNC Parties......................... 8

        5.   Dr. Seaman And Her Attorneys Are Not Seeking Any Payments From This Settlement............................................ 8

III. QUESTIONS PRESENTED ................................................................... 8

IV.  ARGUMENT ...................................................................................... 8

    A.   Class Action Settlement Procedure ............................................. 8

    B.   The Court Should Grant Leave to File a Second Amended Complaint Naming the Remaining UNC Parties as Defendants.................................... 9

    C.   The Court Should Certify the Settlement Class ......................... 10

    D.   The Court Should Preliminarily Approve the Settlement .......... 15

V.   PROPOSED PLAN OF NOTICE ......................................................... 20

VI.  THE COURT SHOULD SET A FINAL APPROVAL HEARING AND SCHEDULE ..................................................................................... 21

VII. CONCLUSION ................................................................................ 22

# TABLE OF AUTHORITIES

Page

**Cases**

*Amchem Prods. Inc. v. Windsor,*
  521 U.S. 591 (1997) .................................................................................................... 10

*Ashcroft v. al-Kidd,*
  563 U.S. 731 (2011) .................................................................................................... 18

*Beaulieu v. EQ Indus. Servs., Inc.,*
  No. 5:06-CV-00400BR, 2009 WL 2208131 (E.D.N.C. July 22, 2009) ............ 16, 17, 20

*Berry v. Schulman,*
  807 F.3d 600 (4th Cir. 2015) ...................................................................... 9, 11, 12, 13

*Biggs v. Meadows,*
  66 F.3d 56 (4th Cir. 1995) ........................................................................................... 18

*Ex Parte Young,*
  209 U.S. 123 (1908) .................................................................................................... 18

*Grunin v. Int'l House of Pancakes,*
  513 F.2d 114 (8th Cir.1975) ........................................................................................ 20

*Harlow v. Fitzgerald,*
  457 U.S. 800 (1982) .................................................................................................... 18

*Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
  855 F. Supp. 825 (E.D.N.C. 1994) ........................................................................ 16, 17

*Huang v. Bd. Of Governors of Univ. of N.C.,*
  902 F.2d 1134 (4th Cir. 1990) ..................................................................................... 19

*In re High-Tech Emp. Antitrust Litig.,*
  No. 11-CV-02509-LHK, 2015 WL 5159441 (N.D. Cal. Sept. 2, 2015) ...................... 15

*In re Jiffy Lube Sec. Litig.,*
  927 F.2d 155 (4th Cir. 1991) ................................................................................. 16, 17

*Lukenas v. Bryce's Mountain Resort, Inc.,*
  538 F.2d 594 (4th Cir. 1976) ....................................................................................... 13

*Md. Stadium Auth. v. Ellerbe Becket Inc.,*
  407 F.3d 255 (4th Cir. 2005) ....................................................................................... 19

*Reed v. Big Water Resort, LLC,*
  No. 2:14-cv-101583-DCN, 2016 WL 7438449 (D.S.C. May 26, 2016) ...................... 15

*Regents of the Univ. of Cal .v. Doe,*
  519 U.S. 425 (1997) .................................................................................................... 19

*Safford v. Barnes,*
  191 F.Supp.3d 504 (M.D.N.C. 2016) .......................................................................... 10

1353711.6

*Sullivan v. DB Invs., Inc.*,
    667 F.3d 273 (3d Cir. 2011) (en banc) (affirming certification of two
    nationwide antitrust settlement classes) (citation and internal quotation
    marks omitted), *cert. denied*, *Murray v. Sullivan*, 566 U.S. 923 (2012)......................10
*Thorn v. Jefferson-Pilot Life Ins., Co.*,
    445 F.3d 311 (4th Cir. 2006) ..................................................................................20
*United States v. Manning Coal Corp.*,
    977 F.2d 117 (4th Cir. 1992) ..................................................................................15
*US Airline Pilots Ass'n v. Velez*,
    Case No. 14-CV-00577-RJC-DCK, 2016 WL 1615408 (W.D.N.C. Apr.
    22, 2016) ................................................................................................................passim
*Will v. Mich. Dep't of State Police*,
    491 U.S. 58 (1989) ..................................................................................................18

**Statutes**
42 U.S.C. Section 1983 ................................................................................................18

**Rules**
Fed. R. Civ. P. 15(a)(2) ..................................................................................................9
Fed. R. Civ. P. 23(a) ....................................................................................................11
Fed. R. Civ. P. 23(b)(2) ...............................................................................11, 12, 13, 20
Fed. R. Civ. P. 23(c)(2)(A) ...........................................................................................20
Fed. R. Civ. P. 23(e) ..................................................................................................8, 22
Fed. R. Civ. P. 23(e)(1) .................................................................................................20
Fed. R. Civ. P. 23(e)(2) .................................................................................................16
Fed. R. Civ. P. 23(g)(1)(A)............................................................................................14

**Treatises**
Manual for Complex Litigation (Fourth) §§ 21.632-34 (2004) ...................................9, 10
William H. Rubenstein, 5 *Newberg on Class Actions* ("*Newberg*") § 13.44
    (5th ed. 2017)...........................................................................................................16

# I. THE NATURE OF THE MATTER BEFORE THE COURT

Plaintiff Danielle M. Seaman, M.D., individually and on behalf of a proposed Settlement Class of similarly situated individuals, seeks preliminary approval of a Settlement with Defendant William L. Roper, M.D., M.P.H., in his official capacity as Dean and Vice-Chancellor of Medical Affairs for the University of North Carolina at Chapel Hill School of Medicine and Chief Executive Officer of the University of North Carolina Health Care System, and with proposed Defendants the University of North Carolina at Chapel Hill, the University of North Carolina School of Medicine, and the University of North Carolina Health Care System (collectively, "UNC Parties").

The Settlement is an excellent result for the proposed Settlement Class and should be preliminarily approved. The Settlement provides substantially more relief from the UNC Parties than would have been possible even had Dr. Seaman prevailed at trial. The Eleventh Amendment to the United States Constitution bars all but a claim for injunctive relief against Dr. Roper in his official capacity. Without the Settlement, the Proposed Class could only hope to secure injunctive relief from Dr. Roper. But, through extensive arm's-length negotiations with counsel for the UNC Parties, the Settlement obtains significant injunctive relief from all of the UNC Parties, not just Dr. Roper.

All UNC Parties have consented to the jurisdiction of this Court and to the filing of a Second Amended Complaint naming them as Defendants for the purpose of entering and enforcing the Settlement and Consent Decree that would provide substantial protections for all employees of the UNC Parties and all employees of Defendants Duke University and Duke University Health System (together, "Duke Defendants"). First, the

1353711.6

Consent Decree prohibits the UNC parties from attempting to enter into, entering into, maintaining or enforcing any agreement with any other person to in any way refrain from, requesting that any person in any way refrain from, or pressuring any person in any way to refrain from soliciting, cold calling, recruiting, hiring, or otherwise competing for employees of the other person. (Settlement Agreement, Ex. C ("Consent Decree") at 4.[1])

Second, the Consent Decree requires the UNC Parties to train senior administrators on the antitrust laws and the requirements of the Consent Decree, and requires these senior administrators to personally certify that: (1) they understand and agree to abide by the terms of the Consent Decree; (2) they are unaware of any unreported violation; and (3) they understand that a failure to comply with the Consent Decree may result in civil or criminal contempt against each UNC Party and/or any individual who violates it. (Consent Decree at 7-8.) Further, if any senior administrator learns of any violation or potential violation of any of the terms of the Consent Decree, the UNC Party involved "shall promptly take appropriate action to terminate or modify the activity so as to comply with this Consent Decree and maintain all documents related to any violation or potential violation of this Consent Decree." (*Id.* at 9.)

Third, the UNC Parties have agreed to provide substantial discovery to assist Dr. Seaman in her ongoing litigation against the Duke Defendants. (Settlement Agreement at 9-14; Consent Decree at 10.) This cooperation includes providing documents, compensation data, and deposition testimony and/or interviews. (*Id.*) The

---

[1] The Settlement Agreement is attached as Exhibit A to the Declaration of Dean M. Harvey ("Harvey Decl."), filed herewith.

Duke Defendants are jointly and severally liable for all damages caused by the alleged no-hire agreement, to employees of the Duke Defendants and UNC Parties alike. Discovery cooperation from the UNC Parties will assist Dr. Seaman's continuing efforts to secure monetary relief from the Duke Defendants. The Consent Decree does not limit any proposed Settlement Class member's ability to seek monetary relief from the Duke Defendants.

Dr. Seaman and her counsel request no compensation or attorney fees in connection with the Settlement.

The Court should certify the Settlement Class, preliminarily approve the Settlement, grant Dr. Seaman leave to amend the First Amended Complaint to name the remaining UNC Parties as Defendants, and set a schedule for final approval.

## II.    STATEMENT OF FACTS

### A.    Procedural History and Background

On June 9, 2015, Dr. Seaman filed a complaint against Defendants Duke University and Duke University Health System ("Duke Defendants"), alleging that the Duke Defendants, on the one hand, and the University of North Carolina School of Medicine, the University of North Carolina Health Care System, and Dr. William L. Roper ("UNC Parties"), on the other hand, agreed not to hire each other's skilled medical workers (except when a lateral hire would include a promotion, such as hiring an assistant professor into an associate professor position) (the "No-Hire Agreement"). (Dkt. 1.) Dr. Seaman alleged that the No-Hire Agreement violates Section 1 of the Sherman Act, 15 U.S.C. Section 1, and North Carolina General Statutes Sections 75-1

1353711.6

and 75-2, and sought injunctive and monetary relief for herself and for a proposed class. Dr. Seaman identified Dr. Roper, the University of North Carolina School of Medicine, and the University of North Carolina Health Care System as co-conspirators, but not as Defendants.  (Dkt. 1 at ¶¶ 15-16.)

On August 12, 2015, Dr. Seaman filed a First Amended Complaint alleging an additional claim for injunctive relief against Dr. Roper in his official capacity as Dean of the University of North Carolina School of Medicine and CEO of the University of North Carolina Health Care System.  (First Amended Complaint ("FAC"), Dkt. 15.) Defendants moved to dismiss the First Amended Complaint, arguing that the alleged No-Hire Agreement was immune from antitrust challenge under the state action doctrine. (Dkt. 29 and 31.)  Dr. Seaman opposed the motions.  (Dkt. 32.)  After oral argument and supplemental briefing, the Court denied the motions to dismiss on February 12, 2016, certified an issue for immediate appeal pursuant to 28 U.S.C. Section 1292(b), and stayed discovery.  (Dkt. 39.)  Defendants filed petitions for permission to appeal with the Fourth Circuit, and Dr. Seaman filed an answer opposing the petitions.  On June 3, 2016, the Fourth Circuit denied Defendants' petition, which also effectively lifted the discovery stay.  (Dkt. 50 and 51.)

Settlement discussions between counsel for Dr. Seaman and counsel for Dr. Roper began on August 8, 2016.  (Harvey Decl., ¶ 6.)  These settlement discussions expanded to include counsel for the other UNC Parties on October 10, 2016.  (Harvey Decl., ¶ 7.) Counsel for Dr. Seaman and for the UNC Parties negotiated the terms of a possible settlement for months, and agreed to a term sheet memorializing the basic terms of a

settlement on March 23, 2017.  (*Id.*)  Counsel for Dr. Seaman and for the UNC Parties then negotiated the Settlement, including the Consent Decree, the Second Amended Complaint, and the Notice.  (*Id.*)  This negotiation involved complex issues of how to structure injunctive relief from parties with Eleventh Amendment immunity.  Dr. Seaman and the UNC Parties agreed to the Settlement on August 21, 2017.  (*Id.*)

Dr. Seaman and the UNC Parties recognize that, while Dr. Seaman pursues her individual and representative claims for monetary relief against the Duke Defendants, the only claim against the UNC Parties is a claim for injunctive relief against Dr. Roper in his official capacity.  (Settlement Agreement at 1-2.)  With the Settlement and Consent Decree, Dr. Roper and the UNC Parties agree to provide not only the injunctive relief that Dr. Seaman would have sought against Dr. Roper at trial, but also additional injunctive relief from the other UNC Parties that is significantly broader in scope than what would have been possible even in the event of success at trial.  In addition, the UNC Parties have agreed to provide discovery to Dr. Seaman, which will assist in her ongoing pursuit of monetary relief from the Duke Defendants.

### B. Terms of the Settlement

#### 1. Classwide Injunctive Relief

Without the Settlement, any injunctive relief—even after a victory at trial—would have been limited to the conduct of the Defendants named in the First Amended Complaint.  With respect to the UNC Parties, only Dr. Roper would have been bound.  However, the Settlement makes possible broader injunctive relief from all of the UNC Parties.  The Settlement accomplishes this through an agreed-upon Consent Decree, in

1353711.6

which the "UNC Defendants consent to the exercise of the Court's jurisdiction for the purpose of entering and enforcing [the] Consent Decree." (Consent Decree at 4.)

The Consent Decree is similar to the Stipulated Final Judgment that ended the United States Department of Justice's investigation into no-solicitation agreements among certain technology companies (including Apple Inc., Google Inc., and others). (Harvey Decl., Ex. C.) That Stipulated Final Judgment was approved by the United States District Court for the District of Columbia on March 17, 2011. (*Id.*)

Like the Stipulated Final Judgment, the Consent Decree prohibits the UNC Parties "from attempting to enter into, entering into, maintaining or enforcing any agreement with any other person to in any way refrain from, requesting that any person in any way refrain from, or pressuring any person in any way to refrain from soliciting, cold calling, recruiting, hiring, or otherwise competing for employees of the other person." (Consent Decree at 4.) The Consent Decree permits only certain narrowly-tailored and time-restricted no-direct-solicitation provisions, provided that they are reasonably necessary to specified and legitimate pro-competitive activities. (*Id.* at 4-5.)

The Consent Decree requires that senior administrators review it and certify that they: have read, understand, and agree to abide by its terms; are not aware of any unreported violation; and understand that "any person's failure to comply with this Consent Decree may result in civil or criminal contempt of court against each UNC Defendant and/or any person who violates this Consent Decree." (Consent Decree at 7-8.) The Consent Decree requires that senior administrators be briefed annually on its requirements, and on the meaning and requirements of the antitrust laws. (*Id.* at 7.) In

1353711.6

addition, upon written request by Dr. Seaman's counsel, the University of North Carolina at Chapel Hill, the University of North Carolina School of Medicine, and the University of North Carolina Health Care System will provide certifications verifying compliance with the Consent Decree. (*Id.* at 8-9.)

Finally, if any UNC Party "learns of any violation or potential violation of any of the terms and conditions contained in [the] Consent Decree, the UNC [Party] involved shall promptly take appropriate action to terminate or modify the activity so as to comply with [the] Consent Decree and maintain all documents related to any violation or potential violation of [the] Consent Decree." (Consent Decree at 9.)

### 2.    Discovery Cooperation

The Consent Decree provides that the UNC Parties will "cooperate in providing discovery regarding the ongoing litigation against the Duke Defendants, as provided in the Settlement Agreement filed herewith." (Consent Decree at 10.) This discovery cooperation includes making witnesses available for deposition or interviews, searching and providing documents and electronically stored information from 23 agreed-upon UNC custodians, and producing employee data. (Settlement Agreement at 9-14.) To date, the UNC parties have complied with these obligations and cooperated with supplemental requests. (Harvey Decl., ¶ 10.)

### 3.    The Proposed Settlement Class

The definition of the Settlement Class matches the scope of the injunctive relief obtained. While the First Amended Complaint (and proposed Second Amended Complaint) alleges a litigation class of skilled medical employees, the Settlement and

- 7 -

Consent Decree provide injunctive relief for all employees of the Duke Defendants and the UNC Parties. Accordingly, the proposed Settlement Class includes all employees of the Duke Defendants and the UNC Parties during the class period of January 1, 2012 through the date of the Settlement, August 21, 2017. (Settlement at 4.)

### 4. Release of Claims Against the UNC Parties

Upon the Effective Date of the Settlement, Dr. Seaman and the Settlement Class will release all claims against the UNC Parties arising from or related to the allegations of the proposed Second Amended Complaint. (Settlement at 14.)

### 5. Dr. Seaman And Her Attorneys Are Not Seeking Any Payments From This Settlement

Dr. Seaman's counsel are not seeking attorneys' fees or costs from this settlement, and Dr. Seaman is not requesting a service award from this settlement.

## III. QUESTIONS PRESENTED

Should the Court grant leave to amend the complaint, certify the Settlement Class, preliminarily approve the Settlement, and set a schedule for final approval?

## IV. ARGUMENT

### A. Class Action Settlement Procedure

To become effective, the Settlement must be approved by the Court. *See* Fed. R. Civ. P. 23(e). The process includes four steps:

1. Certifying the Settlement Class for settlement purposes;

2. Determining that the Settlement is within the range of possible approval (preliminary approval);

3. Disseminating notice of the Settlement to Settlement Class members; and

- 8 -

4.      Holding a final approval hearing and determining whether the Settlement should be approved as fair, adequate, and reasonable.

*See* Manual for Complex Litigation (Fourth) §§ 21.632-34 (2004); *Berry v. Schulman*, 807 F.3d 600 (4th Cir. 2015) (affirming certification of settlement class and approval of class settlement); *US Airline Pilots Ass'n v. Velez*, Case No. 14-CV-00577-RJC-DCK, 2016 WL 1615408, at *1 (W.D.N.C. Apr. 22, 2016) (certifying settlement class and granting preliminary approval of class settlement).

### B.      The Court Should Grant Leave to File a Second Amended Complaint Naming the Remaining UNC Parties as Defendants

In order to effectuate the Settlement and the Consent Decree, the Court should grant Dr. Seaman leave to file the Second Amended Complaint, attached to the Settlement Agreement as Exhibit A.  The Second Amended Complaint is identical to the First Amended Complaint, except that it names the University of North Carolina at Chapel Hill, the University of North Carolina School of Medicine, and the University of North Carolina Health Care System as Defendants, in light of their consent to the Court's jurisdiction.

"The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  While the schedule provides that Dr. Seaman may add additional parties until September 30, 2016, that deadline is without prejudice to amending the pleadings under Rule 15.  (Dkt. No. 56 at 5-6.)  Granting leave to amend will not delay trial, nor delay any other proceedings.  In addition, good cause exists to grant leave to amend because Dr. Seaman could not have named these entities as Defendants earlier without their

consent, which they provided only as part of the Settlement, signed on August 21, 2017. *See Safford v. Barnes*, 191 F.Supp.3d 504, 507 (M.D.N.C. 2016) ("[w]hether a party can satisfy Rule 16(b)'s 'good cause' requirement centers primarily on the diligence of the party seeking the amendment.") (citation and internal quotation marks omitted).

The UNC Parties consent to the filing of the Second Amended Complaint. (Settlement Agreement, Ex. A.)  The Duke Defendants do not oppose the request. (Harvey Decl., ¶ 17.)

### C.    The Court Should Certify the Settlement Class

Before granting preliminary approval of the Settlement, the Court should determine whether the proposed Settlement Class is appropriate.  *See* Manual § 21.632; *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  Rule 23 governs the issue of class certification, whether the proposed class is a litigated class or, as here, a settlement class.  All criteria for certification of a class for litigation purposes, except manageability, apply to certification for settlement purposes.  *Amchem Prods.*, 521 U.S. at 620.

There is a "strong presumption in favor of voluntary settlement agreements" that is "especially strong in class actions and other complex cases because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts."  *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 311 (3d Cir. 2011) (en banc) (affirming certification of two nationwide antitrust settlement classes) (citation and internal quotation marks omitted), *cert. denied*, *Murray v. Sullivan*, 566 U.S. 923 (2012).

Courts in this District have begun this analysis by making "two initial determinations: (1) whether a precisely defined class exists; and (2) whether the class

1353711.6

representative is a member of the proposed class." *Velez*, 2016 WL 1615408, at *1 (citations omitted). Both initial determinations are satisfied here. First, the Settlement Class is precisely defined in terms of employees of certain employers during a specified period of time (January 1, 2012 to August 21, 2017). (Settlement at 4.) Second, the proposed Settlement Class representative, plaintiff Dr. Seaman, is a Settlement Class member because she was an employee of Duke University during the relevant time period. (Declaration of Danielle Seaman In Support of Plaintiff's Motion for Class Certification ("Seaman Decl."), ¶ 2.)

Next, the Court must determine whether the four threshold requirements of Rule 23(a) are met. Those requirements are:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). *See also Berry*, 807 F.3d at 608; *Velez*, 2016 WL 1615408, at *2.

These requirements are met for the same reasons explained in Dr. Seaman's motion to certify a litigation damages class, filed herewith.

Finally, the Court must determine whether the proposed Settlement Class satisfies the requirements under one of the three subsections of Rule 23(b). In Dr. Seaman's motion to certify a litigation damages class, that subsection is Rule 23(b)(3). Here, the relevant subsection is Rule 23(b)(2).

Certification under Rule 23(b)(2) is appropriate if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "Because of the group nature of the harm alleged and the broad character of the relief sought, the (b)(2) class is, by its very nature, assumed to be a homogenous and cohesive group with few conflicting interests among its members. Accordingly, Rule 23(b)(2) classes are 'mandatory,' in that 'opt-out rights' for class members are deemed unnecessary and are not provided under the Rule." *Berry*, 807 F.3d at 608-90 (citation and internal quotation marks omitted).

Rule 23(b)(2) is satisfied here because the Duke Defendants and the UNC Parties have allegedly acted on grounds that apply generally to the Settlement Class, so that injunctive relief as to the Settlement Class as a whole is appropriate. The alleged No-Hire-Agreement was not specific to any particular person, but instead applied broadly. With the Settlement, the UNC Parties consent to the jurisdiction of this Court to enter and enforce a Consent Decree that: prohibits the alleged agreement and anything similar to it; requires ongoing antitrust training for senior administrators; mandates reporting of any similar agreements that are discovered; and requires the UNC Defendants, upon request by Dr. Seaman's counsel, to confirm and certify ongoing compliance. (Consent Decree at 4; 7-9.) The Settlement provides a "paradigmatic Rule 23(b)(2)" Class, because the "meaningful, valuable injunctive relief afforded by the [Settlement] is indivisible, benefiting all members of the (b)(2) Class at once." *Berry*, 807 F.3d at 609 (citation and internal quotation marks omitted).

Further, the Settlement Class addresses claims for injunctive relief, not claims for damages. In the First Amended Complaint, Dr. Seaman's individual and representative claims against Dr. Roper are for injunctive relief only. (FAC ¶ 79.) Dr. Seaman only alleges claims for monetary relief against the Duke Defendants, and those claims are not constrained in any way by the Settlement. To the contrary, the Settlement requires the UNC Defendants to provide discovery to Dr. Seaman to assist in her ability to obtain monetary relief from the Duke Defendants. (Consent Decree at 10; Settlement Agreement at 9-14.) Thus, while members of the alleged litigation class have claims for monetary relief against the Duke Defendants, the Settlement preserves those claims, and instead resolves injunctive relief claims to the benefit of all members of the Settlement Class. The Settlement is a perfect fit with Rule 23(b)(2), and the Court should certify the Settlement Class. *See Berry*, 807 F.3d at 608-10; *Lukenas v. Bryce's Mountain Resort, Inc.*, 538 F.2d 594, 595 (4th Cir. 1976) (Rule 23(b)(2) is "applicable where the relief sought is exclusively or predominantly injunctive or declaratory.") (citation and internal quotation marks omitted); *Velez*, 2016 WL 1615408, at *2.

Dr. Seaman also moves for appointment of her counsel as Settlement Class Counsel and for appointment of herself as the representative of the Settlement Class. Under Rule 23(g)(1)(A), the Court must consider the following:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (iii) counsel's knowledge of the applicable law; and

1353711.6

(iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).  All of these factors weigh in favor of appointing Lieff, Cabraser, Heimann & Bernstein, LLP ("LCHB") and Elliot Morgan Parsonage, P.A. ("EMP") as Settlement Class Counsel.

First, LCHB and EMP did substantial work identifying and investigating the claims at issue in this action.  Unlike many antitrust class actions, the basis for this case was not a pre-existing government enforcement action, but rather proposed Settlement Class Counsel's own investigation.  After filing this case, proposed Settlement Class Counsel successfully opposed Defendants' motions to dismiss and defeated Defendants' petition to the Fourth Circuit for permission to appeal that order.  Thereafter, proposed Settlement Class Counsel have vigorously pursued discovery and filed herewith a motion to certify a litigation class for damages under Rule 23(b)(3).

Second, LCHB and EMP have significant experience handling class actions, including antitrust and employment class actions. (Harvey Decl., ¶ 13 and Ex. B; Declaration of Robert M. Elliot ("Elliot Decl."), ¶¶ 3-7.)  Third and relatedly, Settlement Class Counsel have demonstrated their knowledge of the applicable law by defeating Defendants' motions to dismiss and Defendants' petition to the Fourth Circuit.  In addition, LCHB litigated a very similar case against the nation's leading technology companies, securing an historic settlement of $435 million on behalf of a certified litigation class of approximately 60,000 skilled high-technology workers across seven

- 14 -

companies. *In re High-Tech Emp. Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 WL 5159441, at *4 (N.D. Cal. Sept. 2, 2015).

Fourth, LCHB and EMP have devoted ample resources to litigating this action and to negotiating the Settlement. LCHB and EMP have deposed 9 witnesses, reviewed more than 220,000 pages of documents and more than 70 gigabytes of employee data, and retained leading experts to review the evidence and opine on issues relevant to class certification. (Harvey Decl., ¶¶ 4-5; Elliot Decl. ¶¶ 8-9.) LCHB and EMP have also devoted months to negotiating the Settlement, and, if approved, will continue to monitor compliance with the Settlement and the Consent Decree. (Harvey Decl., ¶¶ 6-7; Consent Decree at 8-9, requiring signed verifications of ongoing compliance upon request by Dr. Seaman's counsel.)

Accordingly, the Court should appoint LCHB and EMP as Settlement Class counsel. *See Velez*, 2016 WL 1615408, at *3.

The Court should appoint Dr. Seaman as the representative of the Settlement Class because: (1) she is a member of the Settlement Class, as explained above; and (2) she has no conflict with any other Settlement Class member. (Seaman Decl., ¶¶ 2, 5.) Therefore, the Court should find that she will fairly and adequately protect the interests of the Settlement Class. *See Velez*, 2016 WL 1615408, at *3.

### D. The Court Should Preliminarily Approve the Settlement

"It has long been clear that the law favors settlement." *United States v. Manning Coal Corp.*, 977 F.2d 117, 120 (4th Cir. 1992). This is particularly true in class actions. *Reed v. Big Water Resort, LLC*, No. 2:14-cv-101583-DCN, 2016 WL 7438449, at *5

(D.S.C. May 26, 2016) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (citation and internal quotation marks omitted); William H. Rubenstein, 5 *Newberg on Class Actions* ("*Newberg*") § 13.44 (5th ed. 2017) (gathering cases).

At this initial stage of settlement review, this Court should determine "whether the proposed settlement is within the range of possible approval or, in other words, whether there is probable cause to notify the class of the proposed settlement." *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 827 (E.D.N.C. 1994) (internal quotation marks omitted). *See also Velez*, 2016 WL 1615408, at *4 (quoting same). The Court should approve a class settlement if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991). "In applying this standard, the Fourth Circuit has bifurcated the analysis into consideration of fairness, which focuses on whether the proposed settlement was negotiated at arm's length, and adequacy, which focuses on whether the consideration provided the class members is sufficient." *Beaulieu v. EQ Indus. Servs., Inc.*, No. 5:06-CV-00400BR, 2009 WL 2208131, at *23 (E.D.N.C. July 22, 2009) (citing *Jiffy Lube*, 927 F.2d at 158-59). A four-factor test is applied to determine the fairness of a proposed settlement: "(1) the posture of the case at the time the proposed settlement was reached, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the settlement negotiations, and (4) counsel's experience in the type of case at issue." *Id.* at *24. *See also Velez*, 2016 WL 1615408, at *4 (quoting same).

All four fairness factors favor approval here. The Settlement was reached after extensive adversarial litigation, including the adjudication of Defendants' motions to dismiss and their petition for appellate review. Resolving these motions clarified the applicable law and set the stage for the settlement negotiations. Those negotiations were adversarial, arm's-length, and occurred through many discussions that required more than a year to complete, during which time Dr. Seaman aggressively pursued discovery. (Harvey Decl., ¶¶ 7-8.) Finally, counsel for Dr. Seaman have extensive experience in antitrust and class action litigation. (Harvey Decl., ¶¶ 13-14; Elliot Decl., ¶¶ 3-7.)

The Court assesses the adequacy of the Settlement through the following factors: "(1) the relative strength of the plaintiffs' case on the merits, (2) any difficulties of proof or strong defenses the plaintiffs would likely encounter if the case were to go to trial, (3) the expected duration and expense of additional litigation, (4) the solvency of the defendants and the probability of recovery on a litigated judgment, and (5) the degree of opposition to the proposed settlement." *Beaulieu*, 2009 WL 2208131, at *26 (citing *Jiffy Lube*, 927 F.2d at 158; *Horton*, 855 F. Supp. at 829–30). *See also Velez*, 2016 WL 1615408, at *4 (quoting same).

With respect to the first and second factors, *Velez* recognizes that "[r]egardless of the strength of a claim on the merits, one can never ensure a finding of liability in complex litigation" such as this case. 2016 WL 1615408, at *4 (finding the first two adequacy factors satisfied). Further, even assuming that a jury would agree with Dr. Seaman on the merits of her claims, Dr. Seaman would be limited to recovering only injunctive relief from Dr. Roper in his official capacity. (*See* FAC ¶ 79.) The reason is

that official capacity suits against State agents are limited to injunctive relief. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Ex Parte Young*, 209 U.S. 123, 159-60 (1908); *Biggs v. Meadows*, 66 F.3d 56, 58 (4th Cir. 1995).

In order to seek monetary relief from Dr. Roper in his individual capacity, Dr. Seaman would have had to prevail on a claim for damages under 42 U.S.C. Section 1983, overcoming a defense of qualified immunity. Overcoming qualified immunity is very difficult, as it protects "all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (citation and internal quotation marks omitted). Dr. Roper would have been shielded from liability for damages unless Dr. Seaman established that Dr. Roper violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Legal precedent must place the legal violation "beyond debate." *Al-Kidd*, 563 U.S. at 741. Here, while Dr. Seaman prevailed on the question of whether *ipso facto* immunity applied to Dr. Roper for purposes of Defendants' motions to dismiss, this Court concluded that there is a "substantial ground for difference of opinion" on the matter. (Dkt. No. 39.) It would thus be essentially impossible to prove that the issue is "beyond debate" for purposes of defeating qualified immunity. *Al-Kidd*, 563 U.S. at 741.

With respect to the other UNC Parties (the University of North Carolina at Chapel Hill, the University of North Carolina School of Medicine, and the University of North Carolina Health Care System), even injunctive relief would have been impossible without the Settlement. That is because these entities are agents of the State of North Carolina for

1353711.6

purposes of Eleventh Amendment immunity, barring suit without their consent. *See Regents of the Univ. of Cal .v. Doe*, 519 U.S. 425, 431 (1997) (finding that the University of California is entitled to Eleventh Amendment immunity); *Md. Stadium Auth. v. Ellerbe Becket Inc.*, 407 F.3d 255, 262 (4th Cir. 2005) (recognizing that courts have found public universities to "[a]lmost universally" be entitled to Eleventh Amendment immunity); *Huang v. Bd. Of Governors of Univ. of N.C.*, 902 F.2d 1134, 1138 (4th Cir. 1990) (holding that the University of North Carolina is entitled to Eleventh Amendment immunity). Injunctive relief against these State agency institutions is made possible through the Settlement, which includes their consent to jurisdiction.

The first four adequacy factors all weigh strongly in favor of approving the Settlement. The Settlement achieves much more than what Dr. Seaman could have reasonably expected to achieve at trial from the UNC Parties. Dr. Seaman could not have obtained monetary damages from the UNC Parties, and injunctive relief would have been limited to Dr. Roper in his official capacity. Further, the Settlement does not prejudice Dr. Seaman's ability to secure full damages from the remaining Duke Defendants, who remain jointly and severally liable to Duke and UNC employees alike. In addition, the Settlement requires the UNC Parties to cooperate in discovery and provide data, documents, and testimony, all of which will aid Dr. Seaman's continued efforts to secure monetary relief. The fifth factor, the degree of opposition to the Settlement, can only be known after the Court grants preliminary approval and directs notice to the Settlement Class.

The Court should grant preliminary approval of the Settlement.

1353711.6

## V.    PROPOSED PLAN OF NOTICE

When a class is certified under Rule 23(b)(2), the court may "direct appropriate notice to the class," but need not follow the strict requirements of class notice for classes certified under Rule 23(b)(3).  Fed. R. Civ. P. 23(c)(2)(A); *see also Thorn v. Jefferson-Pilot Life Ins., Co.*, 445 F.3d 311, 330 n. 25 (4th Cir. 2006) ("[u]nlike Rule 23(b)(3), Rule 23(b)(2) neither requires class members be given notice of class certification nor allows class members the opportunity to opt-out of the class action.").

When a class claim is settled, notice must be provided in a "reasonable manner to all class members who would be bound by the [proposed settlement]."  Fed. R. Civ. P. 23(e)(1).  "While the rule does not spell out the required contents of the settlement notice, it must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings.'" *Beaulieu*, 2009 WL 2208131, at *28 (quoting *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 122 (8th Cir.1975)).

The Settlement provides for three forms of notice.  First, proposed Settlement Class Counsel will create and maintain a case-specific website containing the notice, the Settlement, and other relevant documents.  (Settlement at 6.)  Second, proposed Settlement Class Counsel and counsel for the UNC Parties will jointly issue a press release regarding the Settlement that contains a link to the case-specific website.  (*Id.*) Third, the UNC Parties will email the proposed notice (attached to the Settlement as Exhibit C) to their employees.  (*Id.*at 6-7.)  Counsel for Dr. Seaman has conferred with Duke's counsel regarding emailing the notice to the Duke Defendant's employees.  The

Duke Defendants agree to cooperate in emailing notice to its employees if the Court preliminarily approves Settlement. (Harvey Decl., ¶ 18.)

The proposed notice will fairly apprise members of the Settlement Class and should be approved.

## VI. THE COURT SHOULD SET A FINAL APPROVAL HEARING AND SCHEDULE

The last step in the settlement approval process is the final approval hearing, at which the Court may hear all evidence and argument necessary to evaluate the proposed settlement. At that hearing, proponents of the Settlement may offer argument in support of approval and members of the Class, or their counsel, may be heard in support of or in opposition to the Settlement. Dr. Seaman proposes the following schedule for final approval of the Settlement:

| Event | Date |
|---|---|
| Motion for Preliminary Approval | August 25, 2017 |
| Preliminary Approval Hearing | _____, 2017 |
| Distribution of Notice | Within 20 days of an order granting preliminary approval |
| Objection Deadline | 45 days from Notice Date |
| Motion for Final Approval | To be filed 21 days prior to Final Approval Hearing |
| Replies in Support of Motion for Final Approval | To be filed 7 days prior to Final Approval Hearing |
| Final Approval Hearing | _____, 2017 |

## VII.  CONCLUSION

Based on the foregoing, Dr. Seaman respectfully requests that the Court:  (1) grant

Dr. Seaman leave to file the proposed Second Amended Complaint; (2) certify the

Settlement Class; (3) preliminarily approve the Settlement; and (4) approve notice and

schedule a hearing pursuant to Rule 23(e) of the Federal Rules of Civil Procedure to

determine whether the proposed Settlement is fair, reasonable, and adequate and should

be finally approved.


Dated:  August 25, 2017            */s/      Robert M. Elliot*                        

                                      Robert M. Elliot  (State Bar No. 7709)
ELLIOT MORGAN PARSONAGE, P.A.
426 Old Salem Rd.
Winston-Salem, NC 27101
Telephone: (336) 724-2828
Facsimile: (336) 714-4499
Email: rmelliot@emplawfirm.com

*/s/ Dean M. Harvey*                        
Kelly M. Dermody*
Dean M. Harvey*
Anne B. Shaver*
Abbye Klamann*
LIEFF CABRASER HEIMANN
& BERNSTEIN,  LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
dharvey@lchb.com
kdermody@lchb.com
ashaver@lchb.com
aklamann@lchb.com
*admitted pursuant to LR83.1(d)

## CERTIFICATE OF COMPLIANCE WITH CIVIL LOCAL RULE 7.3

I hereby certify that PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR: (1) CERTIFICATION OF SETTLEMENT CLASS; (2) PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; (3) LEAVE TO AMEND; AND (4) SETTING OF SCHEDULE FOR FINAL APPROVAL complies with Local Rule 7.3(d) and contains fewer than 9,000 words.

This the 25th day of August, 2017.


*/s/      Robert M. Elliot*

Robert M. Elliot  (State Bar No. 7709)
ELLIOT MORGAN PARSONAGE, P.A.
426 Old Salem Rd.
Winston-Salem, NC 27101
Telephone: (336) 724-2828
Facsimile: (336) 714-4499
Email: rmelliot@emplawfirm.com

*/s/  Dean M. Harvey*
Kelly M. Dermody*
Dean M. Harvey*
Anne B. Shaver*
Abbye Klamann*
LIEFF CABRASER HEIMANN
& BERNSTEIN,  LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
dharvey@lchb.com
kdermody@lchb.com
ashaver@lchb.com
aklamann@lchb.com
*admitted pursuant to LR83.1(d)

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on August 25, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

This the 25th day of August, 2017.

*/s/ Dean M. Harvey*

Kelly M. Dermody*
Dean M. Harvey*
Anne B. Shaver
Katherine C. Benson*
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
dharvey@lchb.com
kdermody@lchb.com
ashaver@lchb.com
aklamann@lchb.com
*admitted pursuant to LR83.1(d)

Robert M. Elliot  (State Bar No. 7709)
ELLIOT MORGAN PARSONAGE, P.A.
426 Old Salem Rd.
Winston-Salem, NC 27101
Telephone: (336) 724-2828
Facsimile: (336) 714-4499
Email: rmelliot@emplawfirm.com

*Counsel for Dr. Seaman and the Proposed Class*

- 24 -