IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| DANIELLE SEAMAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DUKE UNIVERSITY; DUKE UNIVERSITY HEALTH SYSTEM, WILLIAM L. ROPER, AND DOES 1-20,<br><br>Defendants. | 1:15-CV-462 |

## **ORDER**

This matter comes before the Court on Plaintiff Dr. Danielle Seaman's motion for: (1) leave to amend; (2) certification of settlement class; (3) preliminary approval of class action settlement; and (4) setting of schedule for final approval. No other party has objected to the motion and it appears from the record that defendant William L. Roper and the proposed new defendants consent to the motion.

**I.     Leave to Amend**

1.      In order to accomplish the proposed settlement, Dr. Seaman seeks leave to file a Second Amended Complaint, Doc. 83-1 at 24-50, naming the University of North Carolina at Chapel Hill, the University of North Carolina School of Medicine, and the University of North Carolina Health Care System as defendants (together with Defendant Dr. William L. Roper, the "UNC Parties"). The UNC Parties consent to the request, and

Defendants Duke University and Duke University Health System (together, "Duke") do not oppose it.

2. "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). While the schedule provides that Dr. Seaman may add additional parties until September 30, 2016, that deadline is without prejudice to amending the pleadings under Rule 15. Doc. 56 at 5-6. Granting leave to amend will not delay trial, or any other proceedings. In addition, good cause exists to grant leave to amend because Dr. Seaman could not have named these entities as Defendants earlier without their consent, which they provided only as part of the Settlement, signed on August 21, 2017. *See Safford v. Barnes*, 191 F.Supp.3d 504, 507 (M.D.N.C. 2016) ("Whether a party can satisfy Rule 16(b)'s 'good cause' requirement centers primarily on the diligence of the party seeking the amendment.") (quotation omitted).

3. For these reasons, Dr. Seaman's motion for leave to file the proposed Second Amended Complaint will be granted.

## II. Certification of Settlement Class

4. Next, Dr. Seaman moves to certify the following Settlement Class pursuant to Federal Rule of Civil Procedure 23(b)(2):

> all natural persons employed by Duke University, Duke University Health System, Inc., the University of North Carolina at Chapel Hill (including the University of North Carolina School of Medicine), and the University of North Carolina Health Care System and in the United States from January 1, 2012 through to August 21, 2017 (the "Settlement Class Period"). Excluded from the Class are: members of the boards of directors and boards of trustees, boards of governors, and senior administrators of Defendants and their co-conspirators who entered into the alleged

agreements, any Defendant's or Settling Defendant's legal representatives in connection with this action (including any person affiliated with any law firm representing any Defendant or Settling Defendant in connection with this action), and any and all judges and justices, and chambers' staff, assigned to hear or adjudicate any aspect of this litigation.

5. There is a "strong presumption in favor of voluntary settlement agreements" that is "especially strong in class actions and other complex cases because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 311 (3d Cir. 2011) (en banc) (affirming certification of two nationwide antitrust settlement classes) (quotation omitted).

6. Federal courts in this state have begun this analysis by making "two initial determinations: (1) whether a precisely defined class exists; and (2) whether the class representative is a member of the proposed class." *US Airline Pilots Ass'n v. Velez*, Case No. 3:14-CV-00577-RJC-DCK, 2016 WL 1615408, at *1 (W.D.N.C. Apr. 22, 2016) (citations omitted). Both initial determinations are satisfied here. First, the Settlement Class is precisely defined in terms of employees of certain employers during a specified period of time (January 1, 2012 to August 21, 2017). Doc. 83-1 at 5-6. Second, the Settlement Class representative, plaintiff Dr. Seaman, is a Settlement Class member because she was an employee of Duke University during the relevant time period. Doc. 85 at ¶ 2.

7. Next, the Court must determine whether the four threshold requirements of the Federal Rule Civil Procedure 23(a) are met. Those requirements are: "(1) the class is

so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

8. First, the Settlement Class—which has thousands of members—is so numerous that joinder of all members is impracticable. Second, Dr. Seaman has shown there are questions of law and fact common to the Settlement Class. Specifically, the following major factual and legal issues are common to the Settlement Class: whether the Defendants entered into a No-Hire Agreement restraining recruitment and hiring, the agreement's scope and duration, and its effect on compensation. Third, Dr. Seaman—who worked as a medical faculty member at Duke during the Class period and allegedly was paid less as a result of the alleged agreement—has claims which are typical of the Settlement Class. *See In re Polyester Staple Antitrust Litig.*, MDL No. 3:03CV1516, 2007 WL 2111380, at *10 (W.D.N.C. July 19, 2007) ("[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members.") (quotation omitted). Dr. Seaman shares with the Settlement Class members the same alleged injuries arising from the same alleged conduct: suppression of their compensation due to the Defendants' agreement. Finally, Dr. Seaman and her counsel have shown that they will adequately protect the interests of the Settlement Class. Dr. Seaman and counsel do not have any conflicts of interests with Settlement Class members and Dr. Seaman has dutifully performed her obligations as a class

4

representative to date. Consequently, Dr. Seaman has met the requirements of Rule 23(a).

9. Certification under Rule 23(b)(2) is appropriate if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "Because of the group nature of the harm alleged and the broad character of the relief sought, the (b)(2) class is, by its very nature, assumed to be a homogenous and cohesive group with few conflicting interests among its members. Accordingly, Rule 23(b)(2) classes are 'mandatory,' in that 'opt-out rights' for class members are deemed unnecessary and are not provided under the Rule." *Berry v. Schulman*, 807 F.3d 600, 608-09 (4th Cir. 2015) (quotations omitted).

10. Rule 23(b)(2) is satisfied here because the Duke Defendants and the UNC Parties have allegedly acted on grounds that apply generally to the Settlement Class, so that injunctive relief as to the Settlement Class as a whole is appropriate. The alleged No-Hire-Agreement was not specific to any particular person, but instead applied broadly. With the Settlement, the UNC Parties have agreed to consent to the jurisdiction of this Court to enter and enforce a consent decree that: prohibits the alleged agreement and anything similar to it; requires ongoing antitrust training to senior administrators; mandates reporting of any similar agreements that are discovered; and requires the UNC Parties, upon request by Dr. Seaman's counsel, to confirm and certify ongoing compliance. Doc. 83-1 at 55-67. The Settlement provides a "paradigmatic Rule

5

23(b)(2)" class, because the "meaningful, valuable injunctive relief afforded by the [Settlement] is indivisible, benefiting all members of the (b)(2) [c]lass at once." *Berry*, 807 F.3d at 609 (citation and internal quotations marks omitted).

11. Based on these findings and reasons, the Court will certify the Settlement Class pursuant to Federal Rule of Civil Procedure 23(b)(2).

12. Appointing Lieff, Cabraser, Heimann & Bernstein, LLP ("LCHB") and Elliot Morgan and Parsonage, P.A. ("EMP") as Settlement Class Counsel is appropriate under Rule 23(g) for the following reasons. First, LCHB and EMP did substantial work identifying and investigating the claims at issue in this action. Doc. 83 at ¶ 4; Doc. 84 at ¶¶ 8-9. Unlike many antitrust class actions, the basis for this case was not a pre-existing government enforcement action, but rather counsel's own investigation. After filing this case, Dr. Seaman's counsel successfully opposed Defendants' motions to dismiss, and defeated Defendants' petition to the Fourth Circuit for permission to appeal that order. Thereafter, Dr. Seaman's counsel vigorously pursued discovery and have filed a motion to certify a litigation class for damages under Rule 23(b)(3). Second, LCHB and EMP have significant experience handling class actions, including antitrust and employment class actions. Doc. 83 at ¶¶ 13-14; Doc. 84 at ¶¶ 6-7. Third and relatedly, LCHB and EMP have demonstrated their knowledge of the applicable law by defeating Defendants' motions to dismiss and Defendants' petition to the Fourth Circuit. Fourth, LCHB and EMP have devoted ample resources to litigating this action and to negotiating the Settlement. Doc. 83 at ¶¶ 4-6; Doc. 84 at ¶¶ 10-11.

13. Appointment of Dr. Seaman as Settlement Class Representative is appropriate because she is a member of the Settlement Class, she has no conflict with any other Settlement Class member, and she has adequately represented the interests of the Settlement Class in the past and is willing and able to so represent those interests in the future. Doc. 85 at ¶¶ 3-7.

### III. Preliminary Approval of Class Action Settlement.

14. Pursuant to Rule 23(e), Dr. Seaman moves for preliminary approval of the proposed Class Settlement with the UNC Parties.

15. "It has long been clear that the law favors settlement." *United States v. Manning Coal Corp.*, 977 F.2d 117, 120 (4th Cir. 1992). This is particularly true in class actions. *Sullivan*, 667 F.3d at 311; *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998) (noting the "strong judicial policy in favor of settlements, particularly in the class action context"); *Reed v. Big Water Resort, LLC*, No. 2:14-cv-101583-DCN, 2016 WL 7438449, at *5 (D.S.C. May 26, 2016) (quoting same); William H. Rubenstein, 5 *Newberg on Class Actions* § 13.44, n.1 (5th ed. 2017) (gathering cases).

16. At this initial stage of settlement review, this Court should determine "whether the proposed settlement is within the range of possible approval or, in other words, whether there is probable cause to notify the class of the proposed settlement." *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 827 (E.D.N.C. 1994) (quotation omitted); s*ee also Velez*, 2016 WL 1615408, at *4 (quoting same).

17. The Court should approve a class settlement if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991). "In applying this standard, the Fourth Circuit has bifurcated the analysis into consideration of fairness, which focuses on whether the proposed settlement was negotiated at arm's length, and adequacy, which focuses on whether the consideration provided the class members is sufficient." *Beaulieu v. EQ Indus. Servs., Inc.*, No. 5:06-CV-00400-BR, 2009 WL 2208131, at *23 (E.D.N.C. July 22, 2009) (citing *Jiffy Lube*, 927 F.2d at 158-59).

18. A four-factor test is applied to determine the fairness of a proposed settlement: "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area [of law at issue]." *Jiffy Lube*, 927 F.2d at 159; *see also Velez*, 2016 WL 1615408, at *4 (applying same). All four fairness factors favor approval here. The Settlement was reached after extensive adversarial litigation, including the adjudication of Defendants' motions to dismiss and their petition for appellate review and a fair amount of discovery. Resolving these motions clarified the applicable law and set the stage for the settlement negotiations. Those negotiations were adversarial, arm's-length, and occurred through many discussions that required more than a year to complete, during which time Dr. Seaman aggressively pursued discovery. Doc. 83 at 2-4. Finally, counsel for Dr. Seaman have extensive experience in antitrust and class action litigation.

19. The Court assesses the adequacy of the Settlement through the following factors: "(1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement." *Jiffy Lube*, 927 F.2d at 159; *Beaulieu*, 2009 WL 2208131, at *26 (applying factors).

20. With respect to the first and second factors, "[r]egardless of the strength of a claim on the merits, one can never ensure a finding of liability in complex litigation" such as this case. *Velez*, 2016 WL 1615408, at *4. Further, even assuming that a jury would agree with Dr. Seaman on the merits of her claims, Dr. Seaman would likely be limited to recovering only injunctive relief from Dr. Roper in his official capacity. *See* Doc. 15 at ¶¶ 77-79.

21. With respect to the University of North Carolina at Chapel Hill, the University of North Carolina School of Medicine, and the University of North Carolina Health Care System, even injunctive relief would have been impossible without the Settlement. That is because these entities are agents of the State of North Carolina for purposes of Eleventh Amendment immunity, barring suit without their consent. *See Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 431 (1997) (finding that the University of California is entitled to Eleventh Amendment immunity); *Md. Stadium Auth. v. Ellerbe Becket Inc.*, 407 F.3d 255, 262 (4th Cir. 2005) (recognizing that courts have found public

9

universities to "[a]lmost universally" be entitled to Eleventh Amendment immunity); *Huang v. Bd. of Governors of Univ. of N.C.*, 902 F.2d 1134, 1138 (4th Cir. 1990) (holding that the University of North Carolina is entitled to Eleventh Amendment immunity); *see also Lee-Thomas v. Prince George's County Pub. Schools*, 666 F.3d 244, 249 (4th Cir. 2012) (tending to indicate prospective injunctive relief is available only against state officials, not state entities). Injunctive relief against these State agency institutions is made possible only through the Settlement, which includes their consent to jurisdiction. *See id.* (discussion waiver of Eleventh Amendment immunity).

22. The first four adequacy factors thus all weigh strongly in favor of approving the Settlement. The Settlement achieves much more than what Dr. Seaman could have reasonably expected to achieve at trial from the UNC Parties. Dr. Seaman could not have obtained monetary damages from the UNC Parties, and injunctive relief would have been limited to Dr. Roper in his official capacity. Further, the Settlement does not prejudice Dr. Seaman's ability to secure full damages from the remaining Duke Defendants, who would appear to remain jointly and severally liable to Duke and UNC employees alike, if liability is found. In addition, the Settlement requires the UNC Parties to cooperate in discovery and provide data, documents, and testimony, which will aid Dr. Seaman's continued efforts to secure monetary relief. The fifth factor, the degree of opposition to the Settlement, can only be known after the Court grants preliminary approval and directs notice to the Settlement Class. The Court is not aware of any opposition to preliminary approval.

23. Based on these findings and for these reasons, the Court will preliminarily approve the settlement.

## IV. Setting of Schedule for Final Approval

24. Finally, Dr. Seaman requests that the Court approve the proposed plan of notice and set a schedule for final approval.

25. When a class is certified under Rule 23(b)(2), the court may "direct appropriate notice to the class," but need not follow the strict requirements of class notice for classes certified under Rule 23(b)(3). Fed. R. Civ. P. 23(c)(2)(A); *see also Thorn v. Jefferson-Pilot Life Ins., Co.*, 445 F.3d 311, 330 n. 25 (4th Cir. 2006) ("[u]nlike Rule 23(b)(3), Rule 23(b)(2) neither requires that class members be given notice of class certification nor allows class members the opportunity to opt-out of the class action.").

26. When a class claim is settled, notice must be provided in a "reasonable manner to all class members who would be bound by the [proposed settlement]." Fed. R. Civ. P. 23(e)(1). "While the rule does not spell out the required contents of the settlement notice, it must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings.'" *Beaulieu*, 2009 WL 2208131, at *28 (quoting *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 122 (8th Cir.1975)).

27. The Settlement provides for three forms of notice. *See* Doc. 83-1 at 7-8. First, Settlement Class Counsel will create and maintain a case-specific website containing the notice, the Settlement, and other relevant documents. Second, Settlement

11

Class Counsel and counsel for the UNC Parties will jointly issue a press release of the Settlement that contains a link to the case-specific website. Third, the UNC Parties will email the proposed notice, Doc. 83-1 at 52-53, to their employees. Duke has agreed to cooperate in emailing notice to its employees. Doc. 83 at ¶ 16.

28. This proposed notice, Doc. 83-1 at 52-53, is appropriate and will fairly apprise members of the Settlement Class.

29. The Court establishes the following schedule for final approval of the Settlement:

| Event | Date |
| --- | --- |
| Distribution of Notice | Within 20 days of this order |
| Objection Deadline | 45 days from Notice Date |
| Motion for Final Approval | To be filed 21 days prior to Final Approval Hearing |
| Replies in Support of Motion for Final Approval | To be filed 7 days prior to Final Approval Hearing |
| Final Approval Hearing | January 4, 2018 |

It is **ORDERED** that:

1. Dr. Seaman's motion for leave to file the proposed Second Amended Complaint, Doc. 81 at ¶ 1, is **GRANTED**. She shall file the Second Amended Complaint within three business days of this Order.

2. Dr. Seaman's motion for certification of the Settlement Class, Doc. 81 at ¶ 2, is

**GRANTED**.

3. Dr. Seaman's motion to preliminarily approve the proposed settlement, Doc. 81 at ¶ 3, is **GRANTED**.

4. Dr. Seaman's motion for appointment of Lieff, Cabraser, Heimann & Bernstein, LLP and Elliot Morgan and Parsonage, P.A. as Settlement Class Counsel, Doc. 81 at ¶ 4, is **GRANTED**.

5. Dr. Seaman's motion for appointment of Dr. Danielle Seaman as Settlement Class Representative, Doc. 81 at ¶ 5, is **GRANTED**.

6. Dr. Seaman's motion that the Court approve the proposed plan of notice and set a schedule for final approval, Doc. 81 at ¶ 6, is **GRANTED**. The proposed notice, Doc. 83-1 at 52-53, is **APPROVED** and the parties shall comply with the schedule for notice, objections, and final submissions set forth *supra* ¶ 29.

7. A final hearing on whether approval of the settlement is appropriate is set for January 4, 2018.

This the 29th day of September, 2017.

                                                                UNITED STATES DISTRICT JUDGE