| | |
|---|---|
| DANIELLE SEAMAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DUKE UNIVERSITY; DUKE UNIVERSITY HEALTH SYSTEM; THE UNIVERSITY OF NORTH CAROLINA AT CHAPEL HILL; THE UNIVERSITY OF NORTH CAROLINA SCHOOL OF MEDICINE; THE UNIVERSITY OF NORTH CAROLINA HEALTH CARE SYSTEM; AND WILLIAM L. ROPER; and DOES 1-20,<br><br>Defendants. | **ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |

This matter comes before the Court on the Motion of Plaintiff Danielle Seaman, M.D., for final approval of the proposed class action settlement ("Settlement") between Dr. Seaman; the Settlement Class; and Defendants the University of North Carolina at Chapel Hill, the University of North Carolina School of Medicine, the University of North Carolina Health Care System, and William L. Roper ("Settling Defendants" together with Dr. Seaman and the Settlement Class, "Settling Parties").

The Court having considered the Motion, the Settling Parties' Settlement Agreement, the pleadings and other papers filed in this Action, and the statements of counsel, and for good cause shown, it is hereby **ORDERED** and **ADJUDGED**:

1. Unless otherwise defined herein, all terms that are capitalized herein shall have the meanings ascribed to those terms in the Settlement Agreement.

2. The Court has jurisdiction over the subject matter of the Settlement Agreement with respect to and over all parties to the Settlement Agreement, including all Class Members and Defendants.

## I. Final Approval of the Class Action Settlement.

3. Pursuant to Rule 23(e), Dr. Seaman moves for final approval of the Settlement.

4. Dr. Seaman's motion for final approval of the Settlement is **GRANTED**.

5. The Court makes the following **FINDINGS** under Federal Rule of Civil Procedure 23:

   a. Rule of Civil Procedure 23(e) requires that proposed class action settlements be "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In the Fourth Circuit, courts have bifurcated Rule 23(e)'s requirements into two analyses: fairness and adequacy. *See, e.g.*, *Phillips v. Triad Guaranty Inc.*, No. 1:09CV71, 2016 WL 1175152, at *2-4 (M.D.N.C. Mar. 23, 2016). The fairness analysis focuses on the settlement terms themselves and whether they were "reached as a result of good-faith bargaining at arm's length without collusion," while the adequacy component assures that the settlement is sufficient in light of the facts of the litigation and the parties' claims. *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991).

b. To determine whether a proposed settlement is fair and the result of arms'-length, non-collusive negotiation, courts in the Fourth Circuit look to: "'(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area of . . . class action litigation.'" *Phillips*, 2016 WL 1175152, at *2 (quoting *Jiffy Lube*, 927 F.2d at 158-59). Each of these four fairness factors favors final approval of the Settlement.

c. Dr. Seaman and the UNC Defendants arrived at the Settlement after significant factual discovery was completed by both Parties, including depositions of fact witnesses and the production and review of extensive documents and employee data. The fact that the Settlement negotiations were informed by written discovery, deposition, and motion practice supports fairness and favors final approval. *See, e.g.*, *Truesdale v. Nationwide Affinity Ins. Co. of Am.*, No. 1:11CV467, 2013 WL 12136588, at *4 (M.D.N.C. Apr. 4, 2013); *Berry v. Schulman*, 807 F.3d 600, 614 (4th Cir. 2015), *cert. denied sub nom. Schulman v. LexisNexis Risk & Info. Analytics Grp., Inc.*, 137 S. Ct. 77 (2016) (upholding fairness finding where settlement followed discovery).

d. Counsel for Dr. Seaman and the UNC Defendants negotiated a Settlement securing broad injunctive relief for the Settlement Class from all of the UNC Defendants. The Settlement was negotiated at arms'-length by informed and experienced counsel, who have been "nationally recognized for their expertise in complex class action litigation." *Phillips*, 2016 WL 1175152, at *3. Settlement Class Counsel have extensive

experience not just in complex class action cases, but also in successfully litigating antitrust cases alleging anticompetitive agreements between competing employers. Settlement Class Counsel have concluded that the Settlement is in the best interests of the Settlement Class, an opinion based upon counsel's analysis of the evidence, case law, and risks and benefits of trial. These considerations weigh in favor of approving the Settlement. *See Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975).

    e. The four relevant factors demonstrate the fairness of the Settlement, and each supports final approval.

    f. In evaluating a settlement's adequacy, "'the most important factor . . . is the relative strengths of plaintiffs' case and the existence of any defenses or difficulties of proof.'" *Truesdale*, 2013 WL 12136588, at *5 (quoting *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 827 (E.D.N.C. 1994)). Courts also look to "the anticipated duration and expense of additional litigation; the solvency of the defendants and the likelihood of recovery on a litigated judgment; and the degree of opposition to the settlement." *Id.* at *4. As the Court found in preliminarily granting the Settlement, these factors weigh strongly in favor of approving the Settlement

    g. By the time the Settlement was reached, motion practice allowed the Settling Parties to accurately weigh each other's claims and defenses. As to Dr. Roper, Dr. Seaman would be limited to recovering only injunctive relief from him in his official capacity, as official capacity suits against State agents are limited to injunctive relief. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Ex Parte Young*, 209 U.S.

123, 159-60 (1908); *Biggs v. Meadows*, 66 F.3d 56, 58 (4th Cir. 1995). In order to seek monetary relief from Dr. Roper in his individual capacity, Dr. Seaman would have had to prevail on a claim for damages under 42 U.S.C. Section 1983, overcoming a defense of qualified immunity. Overcoming qualified immunity is difficult, as it protects "all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (citation and internal quotation marks omitted). Dr. Roper would have been shielded from liability for damages unless Dr. Seaman established that Dr. Roper violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Legal precedent must place the legal violation "beyond debate." *Al-Kidd*, 563 U.S. at 741. In light of the Court's earlier finding that a "substantial ground for difference of opinion" exists as to whether *ipso facto* immunity applied to Dr. Roper (Dkt. No. 39), it would be essentially impossible to prove that the issue is "beyond debate" for purposes of defeating qualified immunity. *Al-Kidd*, 563 U.S. at 741.

        h.      As for the other UNC Defendants, even injunctive relief would have been impossible without the Settlement. That is because these entities are agents of the State of North Carolina for purposes of Eleventh Amendment immunity, barring suit without their consent. *See Regents of the Univ. of Cal .v. Doe*, 519 U.S. 425, 431 (1997) (finding that the University of California is entitled to Eleventh Amendment immunity); *Md. Stadium Auth. v. Ellerbe Becket Inc.*, 407 F.3d 255, 262 (4th Cir. 2005) (recognizing that courts have found public universities to "[a]lmost universally" be entitled to Eleventh

Amendment immunity); *Huang v. Bd. of Governors of the Univ. of N.C.*, 902 F.2d 1134, 1138 (4th Cir. 1990) (holding that the University of North Carolina is entitled to Eleventh Amendment immunity).

      i.    Despite these defenses, Settlement Counsel secured broad injunctive relief—covering all employees of the UNC Defendants—and did so without the time, expense, and risks of trial. Adequacy is therefore met. *See*, *e.g.*, *Berry*, 807 F.3d at 615 (finding settlement securing injunctive relief adequate where there was "no realistic prospect" of monetary relief and noting the benefit of substantial injunctive relief without the risk of litigation). The Settlement also provides additional relief to the Settlement Class in the form of discovery cooperation in the ongoing litigation against the Duke Defendants. This cooperation provides a significant benefit in the ongoing pursuit of monetary damages against the Duke Defendants.

      j.    Additionally, the lack of objections reflects the adequacy of the Settlement. The Fourth Circuit has noted the "great weight" district courts give to the adequacy of a settlement "from the point of view of informed class members"—as reflected by their opposition, or non-opposition, to the settlement. *Jiffy Lube*, 927 F.2d at 159. Here, the UNC and Duke Defendants and Settlement Class Counsel executed the approved notice plan, which constituted appropriate notice under Rule 23(c)(2)(A). In response to this Notice, no Settlement Class Member expressed opposition to the Settlement. To the contrary, the responses were positive and supportive.

      k.    The Settlement is adequate and should be approved.

**IT IS SO ORDERED.**

This the 4th day of January, 2018.

_____<br>UNITED STATES DISTRICT JUDGE