# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF NORTH CAROLINA

### DURHAM DIVISION

| | |
|---|---|
| DANIELLE SEAMAN, individually and on behalf of all others similarly situated, | Case No. 1:15-cv-00462-CCE-JLW |
| Plaintiff, | **BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| v. | |
| DUKE UNIVERSITY and DUKE UNIVERSITY HEALTH SYSTEM, | Fed. R. Civ. P. 23 |
| Defendants. | |

Kelly M. Dermody*
Brendan P. Glackin*
Dean M. Harvey*
Anne B. Shaver*
Lin Y. Chan*
Yaman Salahi*
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
kdermody@lchb.com
bglackin@lchb.com
dharvey@lchb.com
ashaver@lchb.com
lchan@lchb.com
ysalahi@lchb.com
*admitted pursuant to LR83.1(d)

Robert M. Elliot  (State Bar No. 7709)
ELLIOT MORGAN PARSONAGE, P.A.
426 Old Salem Rd.
Winston-Salem, NC 27101
Telephone: (336) 724-2828
Facsimile: (336) 714-4499
Email: rmelliot@emplawfirm.com

*Counsel for Plaintiff Dr. Seaman and the Class*

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................ 1
II.   STATEMENT OF FACTS ........................................................................ 2
      A.    Procedural Background ................................................................ 2
      B.    Mediation Process ....................................................................... 4
      C.    Terms of the Settlement .............................................................. 4
            1.    Cash Payment ................................................................... 5
            2.    Injunctive Relief ............................................................... 5
            3.    Release of Claims ............................................................. 6
            4.    Opt-Out Period and Objections ........................................ 6
            5.    Attorneys' Fees and Costs ................................................ 7
            6.    Notice Administrator ........................................................ 7
            7.    Dispute Fund .................................................................... 7
            8.    Service Award for Dr. Seaman ......................................... 7
      D.    Notice Plan .................................................................................. 8
III.  PROCEDURE FOR SETTLEMENT APPROVAL ............................... 8
IV.   ARGUMENT ............................................................................................ 10
      A.    The Settlement is Excellent, Fair, and Reasonable ................... 11
            1.    A $54.5 Million Cash Recovery ...................................... 11
            2.    Unprecedented Injunctive Relief ..................................... 15
      B.    Dr. Seaman and Class Counsel Vigorously and Adequately
            Advanced the Class's Interests .................................................. 15
      C.    The Allocation Plan Compensates Class Members Based on The
            Degree of Harm ........................................................................... 16
      D.    The Proposed Notice Administrator is Qualified and the Fee Is
            Reasonable ................................................................................... 17
      E.    Class Counsel's Likely Fee Request Is Reasonable ................... 17
      F.    Dr. Seaman's Likely Service Award Request is Reasonable ...... 18
      G.    The Proposed Notice Clearly Explains Class Members' Rights ... 19
      H.    New Class Members May Opt Out and the Court May Decide
            Whether to Offer a Second Opt-Out Opportunity to Prior Class
            Members ....................................................................................... 21
      I.    Class Members Will Have An Opportunity to Object .................. 22
      J.    The Court Should Set a Final Approval Hearing Schedule ......... 22

1716090.4

# TABLE OF CONTENTS

(continued)

V.    CONCLUSION ............................................................................................... 24

1716090.4

# TABLE OF AUTHORITIES

**Page**

## CASES

Barber v. Kimbrell's, Inc.,
   577 F.2d 216 (4th Cir. 1978) ....................................................................... 18

Berry v. Schulman,
   807 F.3d 600 (4th Cir. 2015) ....................................................................... 19

Blum v. Stenson,
   465 U.S. 886 (1984) ..................................................................................... 18

Boyd v. Coventry Health Care Inc.,
   299 F.R.D. 451 (D. Md. 2014) ..................................................................... 17

Cox v. Branch Banking & Trust Co.,
   No. 5:17-cv-1982, 2019 WL 164814 (S.D. W.Va. Jan. 10, 2019) ........................ 10, 14

Dare v. Knox Cty.,
   457 F. Supp. 2d 52 (D. Me. 2006) ................................................................. 22

Decohen v. Abbasi, LLC,
   299 F.R.D. 469 (D. Md. 2014) ..................................................................... 18

Flinn v. FMC Corp.,
   528 F.2d 1169 (4th Cir. 1975) ............................................................... 12, 14

In re Flonase Antitrust Litig.,
   291 F.R.D. 93 (E.D. Pa. 2013) ..................................................................... 17

In re High-Tech,
   2015 WL 5158730 ....................................................................................... 19

In re High-Tech,
   2015 WL 5159441 ....................................................................................... 16

In re Jiffy Lube Sec. Litig.,
   927 F.2d 155 (4th Cir. 1991) ....................................................................... 10

In re Microstrategy, Inc. Sec. Litig.,
   150 F. Supp. 2d 896 (E.D. Va. 2001) ........................................................... 20

In re Titanium Dioxide Antitrust Litig.,
   2013 WL 12241829 (D. Md. Sept. 10, 2013) ................................................ 21

In re Titanium Dioxide Antitrust Litig.,
   No. 10-cv-00318 (RDB), 2013 WL 6577029 (D. Md. Dec. 13, 2013) ........................ 19

Krakauer v. Dish Network, L.L.C.,
   No. 1:14-cv-333, 2018 WL 6305785 (M.D.N.C. Dec. 3, 2018) ................................. 18

1716090.4

# TABLE OF AUTHORITIES
## (continued)

Page

*Low v. Trump Univ., LLC*,
    881 F.3d 1111 (9th Cir. 2018) .................................................................. 21

*Moulton v. U.S. Steel Corp.*,
    581 F.3d 344 (6th Cir. 2009) .................................................................... 21

*Muhammad v. Nat'l City Mortg., Inc.*,
    No. 2:07-cv-423, 2008 WL 5377783 (S.D. W. Va. Dec. 19, 2008) ............ 15

*Phillips v. Triad Guar. Inc.*,
    No. 1:-09-cv-71, 2016 WL 2636289 (M.D.N.C. May 9, 2016) ................... 18

*Robinson v. Carolina First Bank NA*,
    No. 7:18-CV-02927-JDA, 2019 WL 719031 (D.S.C. Feb. 14, 2019) ........... 9

*Scardelletti v. Debarr*,
    43 Fed. Appx. 525 (4th Cr. 2002) ............................................................ 10

*Temp. Servs., Inc. v. Am. Int'l Grp., Inc.*,
    No. 3:08-CV-00271-JFA, 2012 WL 13008138 (D.S.C. July 31, 2012) ...... 19

*United States v. Knorr-Bremse AG, et al.*,
    No. 1:18-cv-747 (D.D.C. Apr. 3, 2018), Dkt. 2-1 ...................................... 15

*Velez v. Novartis Pharm. Corp.*,
    No. 04 Civ. 09194 (CM), 2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) ..... 19

*Wal-Mart Stores v. Visa U.S.A.*,
    396 F.3d 96 (2d Cir. 2005) ...................................................................... 21

## RULES

Fed. R. Civ. P. 23(c)(2)(B) ........................................................................... 21

Fed. R. Civ. P. 23(c)(2)(B)(i)-(vii) ................................................................ 20

Fed. R. Civ. P. 23(e) ...................................................................................... 8

Fed. R. Civ. P. 23(e)(1)(B) ............................................................................. 8

Fed. R. Civ. P. 23(e)(2) .................................................................................. 9

Fed. R. Civ. P. 23(e)(4) ................................................................................ 21

## TREATISES

4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11.53
    (4th ed. 2002) .......................................................................................... 20

*Manual for Complex Litigation* § 21.632 (4th ed. 2004) ................................ 8

1716090.4

# I.    INTRODUCTION

After nearly four years of hard fought litigation, Plaintiff Dr. Seaman has entered into a proposed Settlement with Defendants Duke University and Duke University Health System ("Duke") to resolve the Class's claims. Duke has agreed to pay $54.5 million (approximately $10,000 per Class Member) into a common fund that cannot revert back to Duke, and Duke has agreed to significant injunctive relief that will provide powerful protections to the Class going forward. The Settlement also sets forth an important and perhaps unprecedented role for the United States Department of Justice to monitor and enforce compliance with the Settlement's injunctive relief provisions.

The Settlement is an extraordinary and historic success for the Class. The monetary relief alone is the second largest per capita recovery ever by a class of employees asserting antitrust claims. Harvey Decl., Ex. A. Further, Dr. Seaman faced an unusual challenge here: half of the Class worked for an employer (the University of North Carolina) that was not liable for damages. When adjusting recoveries in similar cases to take this fact into account, the per capita cash recovery here is the largest ever achieved. *Id.*

The Settlement is eminently fair and reasonable and should be preliminarily approved.

- 1 -

## II. STATEMENT OF FACTS

### A. Procedural Background

Dr. Seaman filed her complaint against Duke and UNC's Dr. Roper on June 9, 2015. Dkt. 1. She alleged that Defendants agreed to eliminate competition for each other's medical faculty in violation of Federal and State antitrust laws. *Id.* Duke and Dr. Roper moved to dismiss on grounds of state action immunity. Dkts. 28, 30. Dr. Seaman prevailed. Dkt. 39. Defendants then filed a petition to appeal with the Fourth Circuit. Dkt. 41. Dr. Seaman opposed it, and a unanimous three judge panel of the Fourth Circuit agreed with Dr. Seaman and denied Defendants' petition. Dkt. 50.

On August 25, 2017, Dr. Seaman sought permission to settle the Class claims against Dr. Roper and other UNC entities. Dkt. 81. The UNC settlement resulted in a Consent Decree similar to those used by the DOJ in other no-poach cases, which prohibited UNC from attempting to enter or entering into any agreement to refrain from soliciting, cold calling, recruiting, hiring, or otherwise competing for employees. Dkt. 83-1 at ECF 66. The UNC settlement also required senior UNC administrators to review the consent decree, certify they had read, understood, and agreed to abide by it, and were unaware of any unreported violations. *Id.* It also required annual briefings of senior administrators to train them on the consent decree's requirements and the meaning of the antitrust laws. *Id.* The Court granted final approval to that settlement on January 2018. Dkt. 185. On the same day in August 2017, Dr. Seaman moved to certify a litigation class to proceed with monetary claims against Duke. Dkt. 87. The Court held a hearing

on January 4, 2018, Dkt. 187, and issued an order certifying a class of medical faculty with academic appointments on February 1, 2018, Dkt. 189.

Dr. Seaman pursued the Class's claims tenaciously, obtaining extensive document discovery. Duke produced over 91,000 documents totaling over 400,000 pages, and UNC produced over 8,000 documents totaling over 32,000 pages. Harvey Decl. ¶ 2. Data productions were voluminous and totaled almost 161 gigabytes. *Id.* Dr. Seaman and Duke retained three experts each, all of whom sat for at least one deposition and produced at least one report. *Id.* ¶ 3. In total, the parties' experts produced 20 reports totaling over 1,464 pages, and sat for 10 depositions. *Id.* Additionally, Dr. Seaman deposed 15 percipient witnesses, and herself sat for deposition. *Id.* ¶ 2.

In December 2018, the parties filed *Daubert* and summary judgment motions. In total, the summary judgment motions addressed four substantive topics (state action immunity, causation, liability of Duke University Health System, and whether the rule of reason or per se standard applied), Duke's *Daubert* motions sought exclusion of all of Dr. Seaman's experts' testimony, and Dr. Seaman sought to disqualify one of Duke's experts, Dr. Baker. The parties filed 26 briefs on these topics, Dkts. 330, 331, 334, 335, and the DOJ filed a statement of interest supporting Dr. Seaman's positions on state action immunity and the appropriate legal standard for the alleged misconduct, Dkt. 325. On March 12, 2019, the Court held a hearing lasting 5 hours. Dkt. 346. Many of these motions (*e.g.*, state action immunity and causation) were dispositive or risked significant reductions to Dr. Seaman's damages estimates.

1716090.4

## B.    Mediation Process

The parties participated in years of arm's length mediation through the Court-appointed mediator, Jonathan Harkavy, starting on August 25, 2016.  Dkts. 57, 59.  On March 13, 2019, the day after the Court's hearing on the parties' *Daubert* and summary judgment motions, the parties attended a full-day, in-person mediation conference facilitated by Mr. Harkavy.  Harvey Decl. ¶ 8.  Dr. Seaman personally attended, in addition to relevant decision makers for Duke.  *Id*.  The negotiations were contentious but productive.  By the end of the day, the parties agreed to settle the Class claims for a total of $54.5 million and injunctive relief.  *Id*.  Afterward, the parties negotiated the complete Settlement, a process that included the United States Department of Justice with respect to the Settlement's injunctive relief provisions.  *Id.*

The Settlement was at all times negotiated at arm's length and with Mr. Harkavy's assistance.  Harvey Decl. ¶ 8.  There was no discussion of attorneys' fees and there are no commitments between the parties other than what is in the Settlement.  *Id*.; *see also* Settlement ¶ VIII(Q).

## C.    Terms of the Settlement

The Settlement Class is the same one certified by the Court on Feb. 1, 2018 (Dkt. 189), except it cuts off the class period upon the Court granting preliminary approval of the Settlement.  Settlement ¶ I(A)(3).

1716090.4

1. **<u>Cash Payment</u>**

Duke will pay $54.5 million into a non-reversionary common fund.  Settlement ¶ III(A)(1)-(3).  Each Class Member's recovery will be calculated in approximate proportion to their alleged harm, consistent with Dr. Seaman's damages theory.  *See* Settlement, Ex. B (Plan of Allocation).  This formula accounts for the fact that Class members who earned more or worked longer were allegedly harmed more than those who worked for a shorter period or earned lower compensation.

2. **<u>Injunctive Relief</u>**

The Settlement also includes significant injunctive relief.  Among other provisions, Duke University has agreed that it will:

- not enter into any agreement like the one alleged in this case;

- appoint an antitrust compliance officer;

- train relevant personnel (including all department chairs) regarding antitrust compliance and the requirements of the Settlement, and obtain certifications from all such people that they understand these requirements and that failure to comply may result in contempt of Court;

- report any actual or potential violation of the Settlement to the DOJ;

- permit the DOJ to inspect documents or interview employees;

- agree that the DOJ has all rights to enforce the injunctive relief provisions, including a right to seek an order of contempt from this Court; and

- 5 -

- require its President and Vice President and General Counsel to certify to Class Counsel and to the DOJ that Duke has complied with the Settlement, every year for five years. Settlement § III(B).

This injunctive relief complements the Consent Decree previously obtained from UNC. Dkt. 83-1. Class Counsel have requested and received certifications of compliance from UNC pursuant to that Consent Decree, and will continue to do so. Harvey Decl. ¶ 5, Ex. B. Dr. Seaman and Class Counsel requested no compensation in connection with the UNC settlement, and Class Counsel paid the costs involved in administering the UNC settlement. Harvey Decl. ¶ 5.

### 3. <u>Release of Claims</u>

The settlement releases Class Members' claims against Duke up to the effective date of the Settlement regarding restraints on competition for faculty. Settlement ¶ V(1).

### 4. <u>Opt-Out Period and Objections</u>

The overwhelming majority of Class Members previously had an opportunity to opt-out of the Class after the Court granted class certification. Dkt. 223. Fourteen class members, or less than 0. 3% of the Class, opted out at that time. Harvey Decl. ¶ 6. However, additional employees have joined the Class since then, and will continue to do so until the Court grants preliminary approval of the Settlement. Settlement ¶ I(A)(3). These new Class Members will receive an opt-out opportunity. Settlement ¶ II(D)(2)-(3). The Court is not required to provide an additional opt-out opportunity to Class Members who already received one. However, if the Court exercises its discretion and directs a

- 6 -

second opt-out opportunity for those Class Members, the Settlement provides for a mechanism for that as well. Regardless, all Class Members will have an opportunity to object to the Settlement. *Id.* ¶ II(C).

### 5.    Attorneys' Fees and Costs

Class Counsel will request up to a third of the common fund in attorneys' fees, and will ask to be reimbursed approximately $3.3 million for costs Class Counsel expended in litigating this action. Harvey Decl. ¶ 14. Class Counsel will not include the significant and valuable injunctive relief obtained from Duke and UNC for attorneys' fee purposes.

### 6.    Notice Administrator

The Settlement provides that the costs of notice and administration shall be paid from the Settlement Fund. Settlement ¶ VII(B)(1). Dr. Seaman proposes Rust Consulting, one of the nation's leading settlement administrators. This recommendation follows a competitive bidding process that included two other competing settlement administrators. Rust estimates a total cost under $90,000 to administer the settlement. Harvey Decl. ¶ 12.

### 7.    Dispute Fund

The Notice Administrator will set aside $100,000 in a "Dispute Fund" to resolve disputes that arise within 180 days of distribution to the Class. Settlement ¶ IV(A)(6).

### 8.    Service Award for Dr. Seaman

Dr. Seaman will seek a service award of up to $125,000 to compensate her for her contributions to this Action. Settlement ¶ VI(1).

1716090.4

D.     **Notice Plan**

The parties propose the attached long-form notices, to be mailed and e-mailed directly to Class Members.  *See* Harvey Decl., Ex. A.  The Settlement attaches two notices: one that sets forth an opt-out process, and one that does not.  If the Court does not require a second opt-out opportunity, then only new Class Members will receive the opt-out notice.  If the Court orders a second opt-out opportunity, then all Class Members would receive the opt-out notice.

In addition, the Notice Administrator will maintain a case-specific website with relevant documents and contact information, and will operate a case-specific phone number that Class Members may call to pose questions.  Settlement ¶ II(B)(4).

III.     **PROCEDURE FOR SETTLEMENT APPROVAL**

A class action may not be settled without court approval.  *See* Fed. R. Civ. P. 23(e).  Approval is a two-step process of "preliminary" and "final" approval.  *See Manual for Complex Litigation* § 21.632, at 414 (4th ed. 2004).  At preliminary approval, the Court must decide whether notice of the proposal to the Class "is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."  Fed. R. Civ. P. 23(e)(1)(B).  Only the first factor is relevant because the Court has already certified a class and there are no material changes to it under the settlement.  "The purpose of the preliminary approval is for the court to determine that the proposed settlement agreement is sufficiently within the range of reasonableness."  *Robinson v. Carolina First Bank NA*,

- 8 -

No. 7:18-CV-02927-JDA, 2019 WL 719031, at *7 (D.S.C. Feb. 14, 2019) (citation and quotation omitted).

The 2018 amendments to Rule 23(e) make clear that the same factors which govern final approval under Rule 23(e)(2) also guide preliminary approval. The Court must determine that the settlement is:

fair, reasonable, and adequate after considering whether:

(A)  the class representatives and class counsel have adequately represented the class;

(B)  the proposal was negotiated at arm's length;

(C)  the relief provided for the class is adequate, taking into account:

  (i)  the costs, risks, and delay of trial and appeal;

  (ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

  (iii)  the terms of any proposed award of attorney's fees, including timing of payment; and

  (iv)  any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

In determining whether a settlement is fair, the district court examines whether "the settlement was reached as a result of good-faith bargaining at arm's length, without collusion, on the basis of (1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that has been conducted, (3) the circumstances surrounding the

- 9 -

1716090.4

negotiations, and (4) the experience of counsel in the relevant area of class action litigation." *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991); *see also Scardelletti v. Debarr*, 43 Fed. Appx. 525, 528 (4th Cr. 2002). The Court should also "be satisfied that the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, and does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Cox v. Branch Banking & Trust Co.*, No. 5:17-cv-1982, 2019 WL 164814, at *2 (S.D. W.Va. Jan. 10, 2019) (quotation and citation omitted).

In considering the settlement's adequacy, the court considers "(1) the relative strength of the plaintiff's case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement." *Id.*

If these criteria are met, the court then directs notice to the class of the terms of the proposed settlement and schedules a final fairness hearing.

## IV. <u>ARGUMENT</u>

The Settlement is well within the range of reasonableness and should be preliminarily approved.

1716090.4

## A.     The Settlement is Excellent, Fair, and Reasonable

### 1.     A $54.5 Million Cash Recovery

The monetary component of the Settlement is historic.  It is the second-largest recovery, on a per-capita basis, of any other antitrust employment litigation.  Harvey Decl., Ex. C.  The result is remarkable considering that the alleged conspiracy involved non-profit defendants, only half of which (Duke) could be held liable for money damages.  After discounting other settlements accordingly, the cash recovery obtained here of over $10,000 per capita is the largest ever.  *Id.*  Only one case comes close, with an adjusted per capita recovery of $7,771.  *Id.*  Third place secured an adjusted per capita recovery of $3,374.  *Id.*  The remaining adjusted settlements are far lower, most netting a few hundred dollars or less, and only a handful reaching above $1,000 per class member.  *Id.*

The most analogous prior settlement is the one obtained in *State of California v. eBay, Inc.*, 5:12-cv-05874-EJD (N.D. Cal. May 1, 2014), which concerned an alleged no-poach agreement between eBay, Inc. and Intuit Inc.  The State of California pursued monetary relief only from eBay because Intuit had previously settled in a related case, *In re: High-Tech Employee Antitrust Litig.*, 5:11-cv-02509-LHK (N.D. Cal.).  Thus, like here, California could only recover damages from one of two alleged conspirators.  The recovery in *eBay* was the lowest of the group, at $134 per Class Member.  The recovery obtained here is over seventy times that.

- 11 -

1716090.4

The settlement amount is also excellent in light of Dr. Seaman's damages estimates and the pending risks that those estimated damages would be reduced or eliminated. Dr. Seaman's expert, Dr. Leamer, provided several damages estimates, ranging from $125 million to $315 million. Dkt. 319-2 at 75-78. The cash component of the Settlement provides recovery of 17% to 44% of these damages estimates. This is reasonable, especially in light of the risks of pending summary judgment and *Daubert* motions, to say nothing of trial and appeal. *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975) (class settlement may be fair even when it "only amount[s] to a fraction of the potential recovery") (citation and quotation omitted).

For example, Duke argued that Dr. Leamer improperly included damages from outside the class period (Dkt. 330-7 at 12-13), an argument to which the Court appeared receptive (Dkt. 346 at 4:22-23 ("[I]t seems to me that the Plaintiff is trying to get damages for time outside the class period.")). Indeed, as the parties were negotiating the Settlement, the Court requested dates for an additional hearing with the experts to further examine this issue. Harvey Decl., ¶ 7. Had the Court agreed with Duke, Dr. Leamer would have had to reduce his damages estimates to a range from $44.5 million to $85 million. Dkt. 330-7 at 13. In that event, the monetary component of the Settlement would provide between 64% to 122% of estimated damages.

Duke also argued that income derived from the PDC (as opposed to Duke itself) should be excluded from the damages estimates. Dkt. 331-9 at 2. Had Duke succeeded, that could have reduced damages to $73.7 million to $128.3 million. Harvey Decl. ¶

1716090.4

11.b.  In that event, the monetary component of the settlement would provide between 42% to 74% of estimated damages.

Had Duke prevailed on both its statute of limitations and PDC arguments, estimated damages would have been reduced to a range of $18.4 million to $32 million. Harvey Decl. ¶ 11.c.  The recovery here would then represent between 170% to 296% of estimated damages.  Further, had Duke prevailed in excluding Dr. Leamer's damages estimates altogether, Dr. Seaman would have been left without any basis to estimate the Class's damages, and the case would have been effectively over.

Even if none of Duke's legal challenges had succeeded, Dr. Seaman still faced several risks at trial.  The jury could have rejected the comparison to the University of Texas schools.  The jury also could have chosen any smaller damages amount, particularly if it did not credit the notion that damage was Class-wide.  This frequently occurs, even in cases where antitrust co-conspirators have pled guilty in parallel criminal proceedings.  For instance, in *In re: TFT-LCD (Flat Panel) Antitrust Litigation*, MDL No. 1827 (N.D. Cal.), the jury returned a verdict for the Class on liability, but awarded only 10% of the Class's damages estimate.  Harvey Decl., Ex. D.

Finally, there was a risk the jury might have concluded there was no conspiracy in effect during the Class Period.  Despite extensive discovery, the only document describing a no-poach agreement between the medical schools during the Class period was the one sent to Dr. Seaman before she filed this case.  SAC ¶ 57.  No percipient witness admitted to the existence of the conspiracy, and every witness Class Counsel

- 13 -

deposed denied it, including the author of the email sent to Dr. Seaman. Molina Dep. at 48-49. Duke was also prepared to introduce evidence of competition between the schools during the Class period, including cross-institutional hiring. *See*, *e.g.*, Cremieux Report ¶¶ 141-143, 150-154. There was a risk that the jury would have chosen to credit Duke's witnesses, which would have resulted in no recovery for the Class.

In short, there were palpable risks associated with Duke's pending motions and the uncertainty of how a jury would interpret the evidence. These risks counseled in favor of the Settlement. Class Counsel, based on its familiarity with the record, prior trial experience, jury focus group work in this and other similar cases, and consultation with Dr. Seaman, weighed these risks and concluded that a guarantee of $54.5 million and injunctive relief would better serve the Class's interests than gambling with dispositive motions, trial, and potential appeals. Harvey Decl. ¶ 10. *See Flinn*, 528 F.2d at 1173 ("The fact that all discovery has been completed and the cause is ready for trial is important, since it ordinarily assures sufficient development of the facts to permit a reasonable judgment on the possible merits of the case."); *Cox*, 2019 WL 164814, at *2 (recognizing that class counsel "who are both experienced in prosecuting and defending complex class action claims" and with a "clear view of the strengths and weaknesses of their cases" are "in a strong position to make an informed decision regarding the reasonableness of a potential settlement") (citation and quotation omitted); *Muhammad v. Nat'l City Mortg., Inc.*, No. 2:07-cv-423, 2008 WL 5377783, at *4 (S.D. W. Va. Dec. 19, 2008) (noting that experienced counsel's "representations to the court that the settlement

- 14 -

1716090.4

provides class relief which is fair, reasonable and adequate should be given significant weight") (citation and quotation omitted).

## 2. Unprecedented Injunctive Relief

The benefit to the Class is not limited to cash, but also includes substantial forward-looking injunctive relief to prevent anything like the alleged misconduct occurring in the future. Together with the prior UNC Consent Decree, Dr. Seaman has secured robust safeguards to prevent future antitrust violations and to promote competition for Class Members.

The Settlement also provides an important role for the DOJ in enforcing compliance with the Settlement's injunctive relief provisions. This is perhaps unprecedented: Dr. Seaman could not locate any other example of a class action settlement that provides an enforcement mechanism for the DOJ. The result is state-of-the-art injunctive relief that is very similar to what the DOJ achieved in its most recent enforcement action in this area. *Compare* Settlement *with* Stipulation and Order, *United States v. Knorr-Bremse AG, et al.*, No. 1:18-cv-747 (D.D.C. Apr. 3, 2018), Dkt. 2-1.

## B. Dr. Seaman and Class Counsel Vigorously and Adequately Advanced the Class's Interests

Dr. Seaman and Class Counsel have adequately represented the Class. But for Dr. Seaman and Class Counsel, the Class would not even be aware that these claims existed. After filing this case, Dr. Seaman paid close attention, sat for deposition, attended court hearings and mediation, and communicated frequently with Class Counsel. Harvey Decl. ¶ 13; Seaman Decl. ¶ 7. Class Counsel vigorously litigated every motion, including

- 15 -

1716090.4

Defendants' motions to dismiss, Dr. Seaman's motion for class certification, and the parties' *Daubert* and summary judgment motions. Harvey Decl. ¶ 4. Several of these involved complex questions of law, prompting the Court to grant permission to pursue an interlocutory appeal. *Id.* Class Counsel also conferred with the DOJ frequently, including providing an in-person presentation in the lead-up to the DOJ's Statement of Interest in opposition to Duke's motion for summary judgment on the state action defense, and in support of the application of the per se standard. Dkt. 325. Class Counsel also conferred with the DOJ and with Duke regarding the Settlement's injunctive relief provisions and the mechanism for an ongoing enforcement role for the DOJ. Harvey Decl. ¶ 4.

Class Counsel and Dr. Seaman have adequately represented the Class's interests.

C.     **The Allocation Plan Compensates Class Members Based on The Degree of Harm**

Under the proposed allocation plan, each Class Member will receive a pro rata share of the Settlement proportionate to the alleged harm suffered. Each Class Member will receive an amount based on the total compensation they received from Duke or UNC while working in a class position during the Class Period divided by the total compensation received by all Class Members in those positions during that time. This formula accounts for the fact that employees who worked longer or with higher salaries were allegedly harmed more. *See In re High-Tech*, 2015 WL 5159441, at *6 (in no-poach case, approving identical allocation plan because it "provides a neutral and uniform metric by which to allocate the Settlement, consistent with Plaintiffs' expert

- 16 -

opinions"); *Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 461 (D. Md. 2014) (observing that allocation plan "need not meet standards of scientific precision" so long as it "have a reasonable and rational basis"); *In re Flonase Antitrust Litig.*, 291 F.R.D. 93, 107 (E.D. Pa. 2013) ("In general, a plan of allocation that reimburses class members based on the type and extent of their injuries is reasonable.") (citation and quotation omitted).

The proposed pro-rata distribution reflecting each Class Member's degree of harm is fair and reasonable.

### D.      The Proposed Notice Administrator is Qualified and the Fee Is Reasonable

Dr. Seaman requests that the Court appoint Rust Consulting as Notice Administrator. *See* Settlement II(A). Class Counsel solicited competitive bids from three notice administrators and selected Rust after evaluating each proposal because it was the most competitive, taking into consideration the services to be provided and Rust's prior involvement in this case. Rust is qualified and has significant experience administering settlements and notice in class action cases, including administering the notice to the Class in this case when the Class was certified. Harvey Decl. ¶ 12.

### E.      Class Counsel's Likely Fee Request Is Reasonable

As this Court recently recognized, "[i]n a common-fund case such as this, 'a reasonable fee is based on a percentage of the fund bestowed on the class.'" *Krakauer v. Dish Network, L.L.C.*, No. 1:14-cv-333, 2018 WL 6305785, at *2 (M.D.N.C. Dec. 3, 2018) (approving 33.33% of $61.3 million common fund as attorneys' fees award)

- 17 -

1716090.4

(quoting *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984)).  "District courts in the Fourth

Circuit 'overwhelmingly' prefer the percentage method in common-fund cases . . . ."  *Id.*

(quoting *Phillips v. Triad Guar. Inc.*, No. 1:-09-cv-71, 2016 WL 2636289, at *2

(M.D.N.C. May 9, 2016)).

At this time, the Court need only determine that one third is within the range of

reasonableness, which the Court has already recognized.  *Krakauer*, 2018 WL 6305785,

at *3 ("Contingent fees of up to one-third are common in this circuit in similar cases.").

When Class Counsel move for attorneys' fees and when a final fairness hearing is held,

the Court will fully evaluate the relevant factors to determine whether to approve Class

Counsel's request.  *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 & n.28 (4th Cir. 1978)

(listing 12 factors).  These factors include consideration of all benefits conferred on the

Class.  *Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 481 (D. Md. 2014) (both monetary and

nonmonetary benefits considered in assessing reasonableness of attorney fee request).

The Court may also choose to conduct a lodestar cross-check.  *Krakauer*, 2018 WL

6305785, at *5 (approving attorneys' fee award of $20.45 million with a lodestar

multiplier of 4.39).

### F.    Dr. Seaman's Likely Service Award Request is Reasonable

Service awards "are intended to compensate class representatives for work done

on behalf of the class, to make up for financial or reputational risk undertaken in bringing

the action, and, sometimes, to recognize their willingness to act as a private attorney

general."  *Berry v. Schulman*, 807 F.3d 600, 613 (4th Cir. 2015) (citation and quotation

- 18 -

1716090.4

omitted).  Such awards are "common . . . in recognition of the time and effort [class representatives] have invested for the benefit of the class."  *Temp. Servs., Inc. v. Am. Int'l Grp., Inc.*, No. 3:08-CV-00271-JFA, 2012 WL 13008138, at *6 (D.S.C. July 31, 2012).

Dr. Seaman will apply for a service award of up to $125,000, to be reviewed and approved by this Court at the final fairness hearing.  Settlement § VI.  This is within the range of reasonableness.  *See In re Titanium Dioxide Antitrust Litig.*, No. 10-cv-00318 (RDB), 2013 WL 6577029, at *1 (D. Md. Dec. 13, 2013) (approving $125,000 service award); *Velez v. Novartis Pharm. Corp.*, No. 04 Civ. 09194 (CM), 2010 WL 4877852, at *4, *8, *28 (S.D.N.Y. Nov. 30, 2010) (awarding $125,000 to class representative); *In re High-Tech*, 2015 WL 5158730, at *18 (approving service awards of $100,000).

Though the Class includes thousands of members, no one else stepped forward to risk their personal reputation or employment for the Class.  Indeed, Dr. Seaman was approached by others who expressed support for this case but did not seek to be a class representative.  Seaman Decl. ¶ 10.  This case would not exist without Dr. Seaman, and her ongoing significant participation was necessary to obtain the Settlement.  Harvey Decl. ¶ 13.

### G. The Proposed Notice Clearly Explains Class Members' Rights

The proposed long-form notice will be mailed and e-mailed to Class Members informing them of the proposed Settlement and offering them a chance to comment.  *See* Harvey Decl., Ex. A.  The notice is based on a model published by the Federal Judicial

- 19 -

Center (FJC),[1] and complies with the FJC's Class Action Notice and Claims Process

Checklist and Plain Language Guide.[2] As required, the notice clearly describes the

nature of the action, the class definition, the legal issues, Class Members' rights to make

an appearance with an attorney, Class Members' right to request exclusion and how to do

so, and the binding effect of a class judgment. *See* Fed. R. Civ. P. 23(c)(2)(B)(i)-(vii); *In*

*re Microstrategy, Inc. Sec. Litig.*, 150 F. Supp. 2d 896 (E.D. Va. 2001) (notice

satisfactory where it is "sufficient to apprise the prospective members of the class of the

terms of the proposed settlement and of the options that are open to them") (citation and

quotation omitted); 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* §

11.53 (4th ed. 2002) (notice is "adequate if it may be understood by the average class

member"). The Class notice also states the date and time of the fairness hearing, the

formula for calculating each Class Member's recovery, and information about the

attorneys' fees and expenses and class representative service awards that may be

requested.

   If the Court approves the notice, Duke and UNC will provide the Notice

Administrator an updated list of current or most-recently known address and e-mail

information for all Class Members. Settlement ¶ II.(B)(5). The notice will then be

mailed and e-mailed directly to Class Members. *Id*. ¶ I(A)(14). Notice will also be

---

[1] *See* https://www.fjc.gov/sites/default/files/2016/ClaAct13.pdf.

[2] *See* https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf.

1716090.4

disseminated online.  *Id.* ¶ II(B)(4).  This method is "the best notice that is practicable under the circumstances."  Fed. R. Civ. P. 23(c)(2)(B).

**H.**     **New Class Members May Opt Out and the Court May Decide Whether to Offer a Second Opt-Out Opportunity to Prior Class Members**

The vast majority of Class Members have already received an opportunity to opt-out.  Because the Settlement Class includes eligible employees who started working for Duke or UNC after notice was sent to the Class but before preliminary approval was granted, additional personnel have joined the Class.  The notice plan provides that these individuals will have an opportunity to request exclusion.

The Court has discretion whether to require a second opt-out period for Class Members who already received an opportunity.  Fed. R. Civ. P. 23(e)(4).  A second chance is not required.  *See*, *e.g.*, *Low v. Trump Univ., LLC*, 881 F.3d 1111, 1121 (9th Cir. 2018) (affirming fairness of settlement notwithstanding lack of second opportunity to opt out); *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 354 (6th Cir. 2009) (agreeing district courts "are not compelled" to require second opt-out opportunity).

Courts have both approved and rejected settlements without second opt-out periods.  *Compare In re Titanium Dioxide Antitrust Litig.*, 2013 WL 12241829, at *2 (D. Md. Sept. 10, 2013) (a "second opt-out right is neither necessary or appropriate") and *Wal-Mart Stores v. Visa U.S.A.*, 396 F.3d 96, 114 (2d Cir. 2005) (affirming settlement approval and explaining that class member was "required to opt out at the class notice stage if it did not wish to be bound by the Settlement"), *with Dare v. Knox Cty.*, 457 F.

- 21 -

1716090.4

Supp. 2d 52, 53 (D. Me. 2006) (refusing to approve the settlement unless a redrafted agreement included a renewed opportunity to opt out).

The Settlement contemplates both possibilities, and defers to the Court for a decision on the matter. In the event the Court does not require a second opt-out opportunity, Exhibit A to the Settlement includes a notice that does not describe an opt-out process for individuals who were Members of the Class during the prior opt-out period.

## I.       Class Members Will Have An Opportunity to Object

The proposed objection process is straightforward and will ensure the Court can hear from all class members who have concerns about the Settlement. Settlement ¶ II(C). The notice provides relevant instructions regarding how to object. Harvey Decl., Ex. A. Those who submit written objections may appear at the final approval hearing, provided they submit a notice of intention to appear. *Id.*

## J.       The Court Should Set a Final Approval Hearing Schedule

The last step of the settlement approval process is the final approval hearing, at which the Court may hear all evidence and argument necessary to evaluate the proposed settlement, including any objections or other responses by Class Members. The parties propose the following schedule for final approval of the Settlement.

- 22 -

1716090.4

| Event | Date |
|---|---|
| Duke and UNC to Submit Class Member Names, Emails, and Addresses to Notice Administrator | Within 14 days of an order granting preliminary approval |
| Notice Administrator will Mail and Email notices, and Maintain Website ("Notice Date") | Within 14 days of receiving Class Member Names, Emails, and Addresses |
| Duke and UNC To Supplement Class Member Data with Social Security Numbers and Total Class Compensation | Within 60 days of this order |
| Class Counsel Motion for Attorneys' Fees, Costs, and Dr. Seaman's Service Award | Within 14 days from Notice Date |
| Opt-Out and Objection Deadline | 30 days from Notice Date |
| Notice Administrator Affidavit of Compliance with Notice Requirements | To be filed 30 days prior to the Final Approval Hearing |
| Motion for Final Approval | To be filed at least 21 days prior to the Final Approval Hearing |
| Replies in Support of Motions for Final Approval, Attorneys' Fees and Costs, and Dr. Seaman's Service Award | To be filed 7 days prior to Final Approval Hearing |
| Final Approval Hearing | _____, 2019 |

1716090.4

## V.  **CONCLUSION**

For the above reasons, Dr. Seaman respectfully requests that the Court: (1) preliminarily approve the Settlement; (2) approve the proposed plan of notice to the Class; (3) appoint Rust Consulting as the Notice Administrator; (4) set a schedule for disseminating notice to Class members, as well as deadlines to comment on, object to, or opt-out of the Class; and (5) schedule a hearing pursuant to Rule 23(e) to determine whether the Settlement should be finally approved.


 Dated:  May 20, 2019                Respectfully submitted,

                                    */s/  Dean M. Harvey*
                                    Kelly M. Dermody*
                                    Brendan P. Glackin*
                                    Dean M. Harvey*
                                    Anne B. Shaver*
                                    Lin Y. Chan*
                                    Yaman Salahi*
                                    LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                                    275 Battery Street, 29th Floor
                                    San Francisco, CA 94111-3339
                                    Telephone: (415) 956-1000
                                    Facsimile: (415) 956-1008
                                    kdermody@lchb.com
                                    bglackin@lchb.com
                                    dharvey@lchb.com
                                    ashaver@lchb.com
                                    lchan@lchb.com
                                    ysalahi@lchb.com
                                    *admitted pursuant to LR 83.1(d)

1716090.4

Robert M. Elliot  (State Bar No. 7709)
ELLIOT MORGAN PARSONAGE, P.A.
426 Old Salem Rd.
Winston-Salem, NC 27101
Telephone: (336) 724-2828
Facsimile: (336) 714-4499
Email: rmelliot@emplawfirm.com

*Counsel for Plaintiff Dr. Seaman and the Class*

1716090.4

## CERTIFICATE OF SERVICE

I hereby certify that on May 20, 2019, I electronically served the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

This the 20th day of May, 2019.

*/s/  Dean M. Harvey*
Kelly M. Dermody*
Brendan P. Glackin*
Dean M. Harvey*
Anne B. Shaver*
Lin Y. Chan*
Yaman Salahi*
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
kdermody@lchb.com
dharvey@lchb.com
ashaver@lchb.com
lchan@lchb.com
ysalahi@lchb.com
*admitted pursuant to LR83.1(d)

Robert M. Elliot  (State Bar No. 7709)
ELLIOT MORGAN PARSONAGE, P.A.
426 Old Salem Rd.
Winston-Salem, NC 27101
Telephone: (336) 724-2828
Facsimile: (336) 714-4499
Email: rmelliot@emplawfirm.com

*Counsel for Plaintiff Dr. Seaman and the Class*

- 26 -

1716090.4