IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| DANIELLE SEAMAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DUKE UNIVERSITY; DUKE UNIVERSITY HEALTH SYSTEM,<br><br>Defendants. | 1:15-CV-462 |

# ORDER GRANTING FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT

Plaintiff Dr. Danielle Seaman seeks final approval of a class action settlement with Duke University and Duke University Health System, hereinafter collectively referenced as "Duke." The Court held a final fairness hearing on September 24, 2019. Counsel for all parties appeared, and Class Members had an opportunity to appear. The Court has considered the motion, all other papers filed concerning that motion, and other pertinent documents and pleadings and has heard from counsel and all interested parties. The Court will grant Plaintiff's motion, enter final judgment, and dismiss this action with prejudice.

Unless otherwise defined herein, all terms that are capitalized herein shall have the meanings ascribed to those terms in the Settlement Agreement. The Court makes the following Findings under Federal Rule of Civil Procedure 23:

**Fairness, Reasonableness, and Adequacy**

1. The Court finds and concludes that the Settlement and proposed Plan of Allocation are fair, reasonable, and adequate and satisfy the criteria for final approval under Federal Rule of Civil Procedure 23 based on these facts and this analysis.

   a. "It has long been clear that the law favors settlement." *United States v. Manning Coal Corp.*, 977 F.2d 117, 120 (4th Cir. 1992). This is particularly true in class actions. *Reed v. Big Water Resort, LLC*, No. 2:14-cv-01583-DCN, 2016 WL 7438449, at *5 (D.S.C. May 26, 2016) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (citation and internal quotation marks omitted); 4 William H. Rubenstein, NEWBERG ON CLASS ACTIONS § 13.44 & n.1 (5th ed. 2018) ("Newberg") (collecting cases).

   b. The Court previously granted preliminary approval of the Settlement, finding that it was fair, reasonable, and adequate, and that the Court was likely to grant final approval of the Settlement pursuant to Federal Rule of Civil Procedure 23(e)(2). *See* Doc. 366. Notice to the Class was distributed on July 2, 2019, pursuant to the Court-approved notice plan. *See* Doc. 373 ¶ 3. The Class had 30 days to object or, if eligible, to opt-out of the Settlement. There were no objections, *id*. at ¶ 11, and, as reported by counsel at the fairness hearing, fewer than 20 Class Members opted out. Taking account of all the information learned during the notice process, the Court now decides whether or not to give final approval of the settlement. *See Newberg* § 13:1.

c. A class settlement may be approved if it is "fair, reasonable, and adequate . . . ." Fed. R. Civ. P. 23(e)(2); *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991). "In applying this standard, the Fourth Circuit has bifurcated the analysis into consideration of fairness, which focuses on whether the proposed settlement was negotiated at arm's length, and adequacy, which focuses on whether the consideration provided the class members is sufficient." *Beaulieu v. EQ Indus. Servs., Inc.*, No. 5:06-CV-00400-BR, 2009 WL 2208131, at *23 (E.D.N.C. July 22, 2009) (citing *Jiffy Lube*, 927 F.2d at 158–59).

d. A four-factor test is applied to determine the fairness of a proposed settlement: "(1) the posture of the case at the time the proposed settlement was reached, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the settlement negotiations, and (4) counsel's experience in the type of case at issue." *Id.* at *24.

e. All four fairness factors favor approval here. The Settlement was reached after extensive adversarial litigation, including adjudication of Defendants' motions to dismiss and their attempted petition for appellate review; extensive fact and expert discovery; litigation of Plaintiff's motion for class certification; and thoroughly briefed *Daubert* and summary judgment motions, in which over two dozen briefs were filed and a full-day of oral argument was held. Doc. 366 at 3. The substantial progress made in this case set the stage for these settlement negotiations. Counsel for both sides had sufficient information to evaluate the costs and benefits of settlement at this juncture.

The parties' negotiations were adversarial, arm's-length, and occurred through many discussions that required more than a year to complete. The negotiations were facilitated through the capable work of a neutral third-party mediator, Jonathan Harkavy. The United States also participated in the settlement negotiations, significantly contributing to the discussion of potential injunctive relief and facilitating an agreement it could join. Finally, counsel for Dr. Seaman have extensive experience in antitrust and class action litigation.

      f.      The Court assesses the adequacy of the Settlement through the following factors: "(1) the relative strength of the plaintiffs' case on the merits, (2) any difficulties of proof or strong defenses the plaintiffs would likely encounter if the case were to go to trial, (3) the expected duration and expense of additional litigation, (4) the solvency of the defendants and the probability of recovery on a litigated judgment, and (5) the degree of opposition to the proposed settlement." *Beaulieu*, 2009 WL 2208131, at \*26 (citing *Jiffy Lube*, 927 F.2d at 158; *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 829–30 (E.D.N.C. 1994)).

      g.      As to the first and second factors, Dr. Seaman has adequately explained both the strengths and risks associated with continued litigation of her claims and trial. In particular, though Dr. Seaman had strong evidence of liability as to her personal claim, Duke was prepared to introduce contrary evidence that the alleged no-poach agreement either did not exist or was not in force during the Class Period. Additionally, even assuming Dr. Seaman prevailed on liability at trial, a substantial open

question remained whether the Court would limit the expert testimony of Dr. Leamer to reduce his largest projected damages estimate of $315 million to a much lower amount by, for example, requiring him to exclude income derived from the Duke's Physician Diagnostic Clinic ("PDC") or damages that the Court concludes fall outside the Class Period. Further, Duke was prepared to challenge Dr. Leamer's use of the University of Texas as a benchmark for calculating antitrust damages. If the jury or the Court had agreed with Duke, it would have reduced Dr. Leamer's estimate significantly, or eliminated it entirely. Finally, there were still pending *Daubert* and summary judgment motions for the Court to adjudicate, which could have been dispositive. In light of these risks, the $54.5 million monetary recovery in the Settlement as well as the injunctive relief reflect a strong result for the Class. The proposed allocation plan is fair and reasonable as it will compensate class members on a pro rata basis according to the degree of alleged harm they suffered.

      h.      As to the third factor, the parties were near trial and were fully informed about the strengths and weaknesses of the evidence. The trial would involve considerable time and expense of the parties and the Court and would have risked the chance of no recovery for the Class. The Settlement guarantees Class Members significant monetary and injunctive relief.

      i.      The fourth factor is irrelevant because there is no indication that Duke would be unable to satisfy a judgment.

j. The fifth factor, the degree of opposition to the Settlement, can now be evaluated because the Class has had an opportunity to comment in response to the notice program. Out of thousands of Class Members, not a single person objected to the Settlement, the proposed allocation plan, the proposed request for attorney's fees and reimbursement of costs, or the proposed service award for Dr. Seaman. *See* Doc. 373 ¶ 11. Furthermore, only a small number of the Class Members exercised their right to opt out of the Class, with almost all the Class Members choosing to release their claims against Duke in exchange for relief under the Settlement. The lack of objections and the small number of exclusion requests are a strong indication of widespread support for the Settlement, and that the Settlement is fair, reasonable, and adequate. *See In re Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 257 (E.D. Va. 2009) ("[A]n absence of objections and a small number of opt-outs weighs significantly in favor of the settlement's adequacy."); *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975) ("The attitude of the members of the class, as expressed directly or by failure to object, after notice, to the settlement, is a proper consideration for the trial court . . . .").

k. The Court therefore concludes that the Settlement and proposed Plan of Allocation are fair, reasonable, and adequate and satisfy the criteria for final approval under Federal Rule of Civil Procedure 23.

**Notice to Class Members**

2. The Class notice was delivered by mail and e-mail to all Class Members. Doc. 373 at ¶ 3. In accordance with Rule 23(c)(2)(B), the notices clearly explained Class

-6-

Members' rights, including the nature of the action, the Class definition, the legal issues, Class Members' rights to make an appearance with an attorney, Class Members' right to request exclusion, Class Members' right to object to the Settlement, and the binding effect of a Class judgment. *See e.g.,* Doc. 373-1. The Notice also apprised Class Members of Class Counsel's intent to request one-third of the common fund as attorney's fees, to request reimbursement of costs, and to request a service award for Dr. Seaman. *Id.*

3. Notice was also given through a case-specific website that published all relevant litigation documents and settlement notices, and which received over 3,298 unique visits. *See* Doc. 373 at ¶ 4. Additionally, the Settlement Administrator established a toll-free telephone number and handled calls from over 215 Class Members concerning the Settlement. *Id.* at ¶ 9.

4. The notice program effectively informed Class Members of their rights, was the best practicable under the circumstances, and complied with all due process requirements. *See* Fed. R. Civ. P. 23(e)(1)(B) (notice must be given to class "in a reasonable manner"); *Domonoske v. Bank of Am., N.A.*, 790 F. Supp. 2d 466, 472 (W.D. Va. 2011) ("In the context of a class action, the due process requirements of the Fifth Amendment require reasonable notice combined with an opportunity to be heard and withdraw from the class.") (citation and quotation omitted).

### Designation of *Cy Pres* Recipient

5. "[A] *cy pres* distribution is designed to be a way for a court to put any unclaimed settlement funds to their next best compensation use, e.g., for the aggregate, indirect, prospective benefit of the class." *Klier v. Elf Atochem N. Am., Inc.*, 658 F.3d 468, 474 (5th Cir. 2011) (quotation omitted); *Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 476 n.15 (D. Md. 2014). The doctrine does not require "that settling parties select a *cy pres* recipient that the court or class members would find ideal," but rather only that there be "a substantial nexus to the interests of the class members" in light of "the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members." *Lane v. Facebook, Inc.*, 696 F.3d 811, 821 (9th Cir. 2012) (citation and quotation omitted).

6. In determining whether a sufficient nexus exists to justify the approval or appointment of a potential *cy pres* beneficiary, many circuits have considered a number of factors, including: "the purposes of the underlying statutes, the nature of the injury to the class members, the characteristics and interests of the class members, the geographical scope of the class, the reasons why the settlement funds have gone unclaimed and the closeness of the fit between the class and the *cy pres* recipient." *In re Polyurethane Foam Antitrust Litig.*, 178 F. Supp. 3d 621, 623 (N.D. Ohio 2016) (quoting *In re Lupron Mktg. and Sales Practices Litig.*, 677 F.3d 21, 33 (1st Cir. 2012); *see, e.g In re: Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316, 322 n. 2, n.3 (3d Cir. 2019); *In re BankAmerica Corp. Secs. Litig.*, 775 F.3d 1060, 1067 (8th Cir.

2015); *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1039–40 (9th Cir. 2011); *In re Lease Oil Antitrust Litig. (No. II)*, 2008-1 Trade Cas. (CCH) ¶ 76041, 2007 WL 4377835, at *21 (S.D. Tex. 2007); *Schwartz v. Dallas Cowboys Football Club, Ltd.*, 362 F. Supp. 2d 574, 576–77 (E.D. Pa. 2005) (finding *cy pres* beneficiary, NFL YET Centers, was appropriate for antitrust violations involving "NFL Sunday Ticket," but distributions to a student legal clinic did not have sufficient nexus); *Newberg* § 12.33 ("[M]ost circuits require that there be a connection—or nexus—between the harm . . . and the benefit. . . .").

7. *Cy pres* is generally preferable to allowing unclaimed funds to escheat to the state or revert to the defendant because "it preserves the class action's deterrent effect and (at least theoretically) more closely tailors the distribution to the interests of class members." *In re Google*, 934 F.3d at 327 (citations and punctuation omitted); *see, e.g., In re Lupron*, 677 F.3d at 32–33 (noting that returning the funds to the defendant "would undermine the deterrence function of class actions and the underlying substantive law") (citation omitted).

8. Pursuant to the parties' Settlement, a *cy pres* distribution is only contemplated if further redistribution of unclaimed funds to Class Members would not be economically feasible. Doc. 359-1 at 26. Neither the parties nor the Court expect this distribution to be large.

9. In the Settlement Agreement, Dr. Seaman proposed the American Antitrust Institute and Duke proposed Habitat for Humanity as appropriate *cy pres* recipients. *Id.* After the Settlement, the parties had further discussions about the *cy pres* recipient. Doc.

376 at ¶ 2. In the motion for final approval, the plaintiff suggested the American Association of University Professors ("AAUP") as a *cy pres* recipient, Doc. 375 at 19–20, because counsel for the plaintiff serves on AAI's Advisory Board and wished to avoid any apparent conflict of interest, Doc. 376 at ¶ 2.[1] Class Counsel has submitted evidence as to the nature of the work of both AAI and AAUP and as to how those organizations would use any *cy pres* funds. Doc. 379; Doc. 380. Despite an invitation, *see* Text Order entered September 17, 2019, Duke has submitted no evidence about Habitat for Humanity.

10. Both AAUP and AAI are non-profit groups which do work related to the subject matter of this case. AAI works specifically in the antitrust field, Doc. 379 at ¶ 3, and AAUP works on behalf of faculty in higher education, Doc. 380 at 3–5, like the class members here. Each would be an appropriate *cy pres* recipient, as they each do work in a field with a nexus to this case.

11. Based on common knowledge, the Court is aware that Habitat does work benefitting the larger community. But there is no evidence that Habitat's work is related to the antitrust issues in this case or to the university world in which this case arose, and at the fairness hearing counsel for Duke agreed there was no real nexus to this case.

---

[1] It appears that Duke may have made other suggestions for the *cy pres* recipient during discussions with plaintiff's counsel, Doc. 376 at ¶ 2, and Duke did offer another alternative during the Fairness Hearing but has not presented any evidence in support of those recipients.

-10-

Case 1:15-cv-00462-CCE-JLW Document 387 Filed 09/24/19 Page 10 of 12

12.  Designation of a *cy pres* recipient with ties to plaintiff's counsel can raise concerns, but it is not necessarily an automatic bar, nor should it be.[2]  Here, there is nothing to indicate that Class Counsel's role at AAI has resulted in an inappropriate *cy pres* recommendation.  Class Counsel's role at AAI is narrow, as he is one of a large number of people on an advisory board and that board has no decision-making authority.  Doc. 379 at ¶ 14.  Class Counsel has been forthcoming about his role at AAI, and Class Counsel will not receive any benefit if AAI is selected as the *cy pres* recipient.  Most importantly, AAI is an obvious choice as the *cy pres* recipient; it has been chosen as such in a number of other cases.  *See* Doc. 379 at ¶ 10.  While there may be other groups with a nexus to the claims in this case, no one has identified a group with a closer nexus.

13.  Given the purposes of the underlying statutes, the nature of the injury to the class members, the characteristics and interest of the class members, the geographical scope of the class, the reasons why settlement funds have gone unclaimed and the closeness of the fit between the class and the *cy pres* recipient, the Court concludes that AAI is the more appropriate *cy pres* recipient because it was listed in the Settlement Agreement as a suggested recipient, there have been no objections to its selection, and because AAI has done extensive work in the area of no-poach agreements like the one at issue here.

---

[2] One court has held on very different facts that approval of a recipient requires an extra layer of examination to insure the recipient was chosen on the merits.  *See In re: Google*, 934 F.3d, at 330–331.  The Court need not decide if such an "extra layer" is required here, as even if it is, AAI is an appropriate *cy pres* recipient and its selection raises no "substantial questions" about the merits of the decision.  *Id.* at 331.

14. Should unclaimed funds remain for which further redistribution would be economically unfeasible, the Settlement Administrator is authorized to disburse those funds to the AAI.

For these reasons and based on the record before it, it is **ORDERED** that the plaintiff's motion, Doc. 374, is **GRANTED** and the Settlement is approved as fair, reasonable and adequate. Judgment will be entered accordingly.

This the 24th day of September, 2019.

_____
UNITED STATES DISTRICT JUDGE